[Civ. No. 21774. Third Dist. Sept. 29, 1983.]

MAXIM N. BACH, Plaintiff and Appellant, v.
COUNTY OF BUTTE et al., Defendants and Respondents.

COUNSEL

Maxim N. Bach, in pro. per., for Plaintiff and Appellant.

Price, Burness, Price, Davis & Brown and Robert L. Davis for Defendants and Respondents.

## OPINION

**SIMS, J.**—In this case we hold that California state courts should apply federal law to determine whether a complaint sufficiently pleads a cause of action under the federal Civil Rights Act (42 U.S.C. § 1983, referred to hereinafter simply as "§ 1983").

Plaintiff Maxim Bach, an attorney, sued the City of Oroville, two Oroville employees, the County of Butte and one Butte County Deputy District Attorney under the federal Civil Rights Act. (§ 1983 et seq.) Plaintiff alleges these defendants conspired to vex, annoy, or injure him by filing and prosecuting a criminal action against him, knowing it was baseless. The demurrer of the county and its deputy district attorney to plaintiff's fourth amended complaint was sustained without leave to amend on the ground the complaint fails to state facts sufficient to constitute a cause of action (Code Civ. Proc., § 430.10, subd. (e)) because the action is barred by prosecutorial immunity.[1] Plaintiff appeals contending that the complaint states a good cause of action against the deputy district attorney and, alternatively, that

---

[1] Plaintiff's complaint against the City of Oroville and its employees survived demurrer and apparently is ongoing in the trial court. We have no warrant to consider plaintiff's cause of action against the city and its employees and imply no view on that subject.

the county is liable because no derivative prosecutorial immunity shields it in a federal civil rights action. We reject these contentions and affirm.

## FACTS

Plaintiff's fourth amended complaint alleges as follows:

Plaintiff Bach is an attorney and his law office is in Oroville. He is the only attorney in the Butte County area who advertises "in the various media." Throughout the period in question plaintiff has represented clients in pending civil actions naming Butte County and specified employees as defendants.

Defendant Carrington is a deputy district attorney and employee of Butte County. Defendants Lyde and Barr are city attorneys and employees of the City of Oroville.

On March 1, 1976, the Oroville City Council adopted a resolution "Establishing Criteria for the Inspection, Repair or Demolition and Removal of Earthquake Damaged Buildings within the City of Oroville." According to the complaint, "On November 8, 1977, defendants, and each of them, pursuant to a conspiracy, caused to be filed or prosecuted an illegal, unfounded and/or totally specious misdemeanor criminal complaint against plaintiff wherein was alleged in two counts that said plaintiff did not have an occupancy permit for his law office building and that he did not have a business license from the CITY OF OROVILLE because he had not complied with the said illegal Earthquake Resolution."

Before filing the complaint, defendants Carrington, Barr, and Lyde had investigated plaintiff's compliance with the earthquake damage resolution and knew he had not violated its provisions or any provision of the City of Oroville code. Lyde and Carrington knew the resolution was not a duly enacted ordinance and that it had no criminal sanction for noncompliance. Plaintiff became the object of the conspiracy in part because he advertised his services as an attorney and represented persons suing Butte County.

On November 21, 1977, Lyde was recused as prosecuting attorney in the criminal proceedings. Thereafter, the court in the criminal action directed the Butte County District Attorney to assume the role of prosecutor and Carrington was assigned the job. On March 21, 1978, Carrington was recused. Carrington then petitioned the superior court for a writ of mandate to set aside his recusal. The petition was denied. Thereafter, the Attorney General assumed the role of prosecutor and on June 20, 1978, the criminal proceedings were dismissed on his motion.

In paragraph IV of his second cause of action, plaintiff alleges that "The defendant, the CITY OF OROVILLE, and the defendant, the COUNTY OF BUTTE, at all times herein, acted pursuant to an Earthquake Resolution passed by the defendant CITY OF OROVILLE, which was illegal and had no criminal sanctions therein (a copy of which is attached hereto and made a part hereof), and each of its general policies, regulations, customs, habits and usages in criminally proceeding against plaintiff in an action that was totally unfounded in law, as well as in fact, and the said wrongful prosecution of plaintiff by each of said defendants was done pursuant to the said defendants' unconstitutional and illegal laws, policies, procedures, regulations, rules, habits, customs, and usages."

Plaintiff alleges that defendants' acts caused him embarrassment, anxiety, humiliation, distress, discomfort, mortification, and damage to his reputation, all to his damage in the amount of $300,000.

## DISCUSSION

### I

### A

At the outset, we investigate the rules pursuant to which we shall measure the adequacy of plaintiff's complaint.

■ The state courts of California have accepted concurrent jurisdiction with the federal courts to adjudicate suits brought under the federal Civil Rights Act (§ 1983).[2] (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 837 [129 Cal.Rptr. 453, 548 P.2d 1125]; see *Maine* v. *Thiboutot* (1980) 448 U.S. 1, 3, fn. 1 [65 L.Ed.2d 555, 558, 100 S.Ct. 2502]; *Martinez* v. *California* (1980) 444 U.S. 277 [62 L.Ed.2d 481, 100 S.Ct. 553]; *Brown* v. *Pitchess* (1975) 13 Cal.3d 518, 522-523 [119 Cal.Rptr. 204, 531 P.2d 772].)

■ It is undisputed that since an action under section 1983 is based on federal statutory law, state courts look to federal law to determine what conduct gives rise to an action under the statute. "Congress has not evinced any intention to defer to the states the definition of the federal right created in section 1983 . . . ." (*Donovan* v. *Reinbold* (9th Cir. 1970) 433 F.2d

[2] Section 1983 provides in pertinent part as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

738, 742; see Note, *Civil Rights Suits Against State and Local Governmental Entities and Officials: Rights of Action, Immunities, and Federalism* (1980) 53 So.Cal.L.Rev. 945, 952-954; 1 Antieau, Federal Civil Rights Acts (2d ed. 1980) §§ 51-52, pp. 94-95.) There remains a question, however, with respect to whether state or federal law should apply to determine whether a plaintiff has filed a complaint that adequately *alleges* the wrongful conduct giving rise to a cause of action or claim for relief under section 1983.

■ The rules of pleading in federal court are generally different from the rules of pleading in California state courts, since the Federal Rules of Civil Procedure recognize a form of "notice pleading," usually designed simply to put a defendant on notice of the nature of a claim, whereas California requires the pleading of facts pursuant to its system of "code pleading" derived from the New York Code of 1848, known as the "Field Code." (See *Diodes, Inc.* v. *Franzen* (1968) 260 Cal.App.2d 244, 250 [67 Cal.Rptr. 19]; Code Civ. Proc., § 425.10, subd. (a); Fed. Rules Civ. Proc., rule 8(a), 28 U.S.C.; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 1-2, pp. 1690-1691, §§ 268-269, pp. 1939-1941.)

California state courts have assumed that California pleading law should be applied to test the adequacy of a complaint brought under the federal Civil Rights Act.[3] (See, e.g., *Bush* v. *California Conservation Corps* (1982) 136 Cal.App.3d 194, 200 [185 Cal.Rptr. 892], mod. 136 Cal.App.3d 1063f; *Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 127 [185 Cal.Rptr. 878]; *Graham* v. *City of Biggs* (1979) 96 Cal.App.3d 250, 255 [157 Cal.Rptr. 761]; *Kanarek* v. *Davidson* (1978) 85 Cal.App.3d 341, 344 [148 Cal.Rptr. 86].) The same assumption has been made with respect to complaints filed in state court pursuant to the Federal Employers' Liability Act (45 U.S.C. § 51 et seq., hereinafter FELA). (See *McMillan* v. *Western Pac. R. Co.* (1960) 54 Cal.2d 841, 845 [9 Cal.Rptr. 361, 357 P.2d 449].) ■ Indeed, the general rule is that where an action founded on a federal statute is properly brought in the state courts, the law of the state, in the absence of any contrary provisions in the federal statute,[4]

---

[3]Other state courts have made the same assumption. (See e.g., *Espinoza* v. *O'Dell* (1981) — Colo. — [633 P.2d 455, 466-467]; *Riedy* v. *Sperry* (1978) 83 Wis.2d 158 [265 N.W.2d 475, 479-480].)

[4]No statute requires the states to apply federal law to test the adequacy of complaints filed in state courts under section 1983. Section 1983 itself makes no reference to state procedures. Moreover, the Federal Rules of Civil Procedure, applicable to actions filed in the federal district courts, do not by their terms apply to actions filed and pursued in the state courts. (Fed. Rules Civ. Proc., rule 1, 28 U.S.C.; *Rader* v. *Baltimore & O. R. Co.* (7th Cir. 1940) 108 F.2d 980, 986, cert. den. 309 U.S. 682 [84 L.Ed. 1026, 60 S.Ct. 722]; *Santasino* v. *Karnuth* (N.Y. Sup. Ct. 1943) 41 N.Y.S.2d 459, 463-464.) Section 1988 of title 42, United States Code governs situations in which federal district courts, hearing section 1983 actions, should apply state law. The statute does not, however, instruct state courts when to apply federal law, except that the statute authorizes an award of attorneys fees in a section 1983 action pursued in state court. (See *Maine* v. *Thiboutot, supra,* 448

controls in matters of practice and procedure. (*King* v. *Schumacher* (1939) 32 Cal.App.2d 172, 181 [89 P.2d 466], cert. den. 308 U.S. 593 [84 L.Ed. 496, 60 S.Ct. 123].)

However, "the purposes underlying section 1983—i.e., to serve as an antidote to discriminatory state laws, to protect federal rights where state law is inadequate, and to protect federal rights where state processes are available in theory but not in practice [citation] . . . may not be frustrated by state substantive limitations couched in procedural language." (*Williams* v. *Horvath, supra,* 16 Cal.3d at p. 841, fn. omitted; see *Morse* v. *Southern Pac. Transportation Co.* (1976) 63 Cal.App.3d 128, 135 [133 Cal.Rptr. 577].) Moreover, it is clear that local rules of pleading can constitute unlawful substantive limitations on a federal statutory right. Thus in *Brown* v. *Western R. of Alabama* (1949) 338 U.S. 294 [94 L.Ed. 100, 70 S.Ct. 105] a Georgia trial court had sustained a general demurrer to a complaint seeking money damages under the FELA. The trial court had relied on a Georgia rule of practice requiring that pleadings allegations be construed most strongly against the pleader. Writing for the majority, Justice Black concluded it was the duty of the Supreme Court "to construe the allegations of this complaint ourselves in order to determine whether petitioner has been denied a right of trial granted him by Congress. This federal right cannot be defeated by the forms of local practice. [Citation.] And we cannot accept as final a state court's interpretation of allegations in a complaint asserting it. [Citations.]" (*Id.,* 338 U.S. at p. 296 [94 L.Ed. at p. 102].)

*Brown* makes it clear that the United States Supreme Court will be the ultimate arbiter of the sufficiency of state court pleadings in a federal statutory action, certainly including an action under section 1983.[5] However, we have no direct guidance from the Supreme Court on the question of what local laws may constitute "over-exacting local requirements for meticulous pleadings . . . ." (*Brown, supra,* 338 U.S. at p. 299 [94 L.Ed. at p. 104].) The pursuit of section 1983 actions in the state courts is of relatively recent origin. (See *Maine* v. *Thiboutot, supra,* 448 U.S. at p. 3, fn. 1 [65 L.Ed.2d at p. 558].) To our knowledge, the Supreme Court has not passed on the sufficiency of state court pleadings in a section 1983 suit. There is, however, a substantial body of law promulgated by the lower federal courts that defines the boundaries of permissible pleading under section 1983. (See *post,*

U.S. at p. 11 [65 L.Ed.2d at p. 563]; *Chardon* v. *Fumero Soto* (1983) — U.S. — [77 L.Ed.2d 74, 103 S.Ct. 2611]; Eisenberg, *State Law in Federal Civil Rights Cases: The Proper Scope of Section 1988* (1980) 128 U.Pa.L.Rev. 499.)

[5]Although we are aware of no case in which the Supreme Court has applied the rule of *Brown* to a section 1983 action initiated in state court, it would be anomalous to require a lesser standard of review under section 1983 than under the FELA, since a deprivation of constitutional rights is often at issue under section 1983.

p. 563 et seq.) Presumably, the federal circuit courts and district courts have no interest in applying pleading rules that unreasonably restrict a plaintiff from pursuing a section 1983 action. These decisions thus furnish state courts, such as ours, the only available guidance with respect to the pleading of section 1983 actions. Moreover, the application of federal law to determine whether a section 1983 complaint, filed in state court, should survive a general demurrer will encourage "desirable uniformity in adjudication of federally created rights . . . ." (*Brown* v. *Western Railway of Alabama, supra,* 338 U.S. at p. 299 [94 L.Ed. at p. 104].) ■ Therefore, in light of *Brown* we hold that the state courts of California should apply federal law to determine whether a complaint pleads a cause of action under section 1983 sufficient to survive a general demurrer.[6] We turn next to the applicable federal law.

## B

■ For purposes of a motion to dismiss a section 1983 complaint,[7] the allegations of the complaint are generally taken as true. (*Hughes* v. *Rowe* (1980) 449 U.S. 5, 10 [66 L.Ed.2d 163, 170, 101 S.Ct. 173].) Federal law sets up two standards of review of the sufficiency of section 1983 complaints depending on whether the complaint has been prepared by a pro. per. liti-

---

[6]One commentator has suggested that *Brown* does not require the state courts to adopt federal pleading rules in federal statutory actions. (See Hill, *Substance and Procedure in State FELA Actions—The Converse of the Erie Problem?* (1956) 17 Ohio St.L.J. 384, 408.) "Apparently a local requirement of particularity in factual allegations is also to be followed if not 'over-exacting.'" (*Ibid.*) Since recourse to federal law would appear to be necessary to determine whether state pleading requirements are "over-exacting," we fail to see the significance of Professor Hill's comments.

Our conclusion does not mean that we are abandoning the requirement of Code of Civil Procedure section 425.10, subdivision (a) that the complaint must contain a "statement of the facts constituting the cause of action, in ordinary and concise language." "The distinction between conclusions of law and ultimate facts is not at all clear and involves at most a matter of degree. [Citations.] For example, the courts have permitted allegations which obviously included conclusions of law and have termed them 'ultimate facts' or 'conclusions of fact.'" (*Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 473 [20 Cal.Rptr. 609, 370 P.2d 313].) Moreover, even under so-called "notice pleading," the federal courts have required that section 1983 complaints be pleaded with more specificity than is available from mere conclusionary allegations. (See *post,* pp. 563-564.) In short, the determinative question is not whether "facts," on the one hand, or "conclusions," on the other, must be pleaded. Rather, the important question is the degree of specificity required of the language of the complaint. (See *Perkins* v. *Superior Court* (1981) 117 Cal.App.3d 1, 6 [172 Cal.Rptr. 427].) The resolution of that question, we hold, is governed by federal law.

This result is not so novel as might appear. In the wake of *Brown,* the Georgia state courts have abandoned state rules of specific pleading in FELA cases and have tested the adequacy of FELA complaints by resort to notice pleading. (See *Atlantic Coast Line Railroad Co.* v. *Daugherty* (1967) 116 Ga.App.438, 157 S.E.2d 880, 884; *Seaboard Air Line Railroad Company* v. *Haupt* (1966) 113 Ga.App. 66 [147 S.E.2d 331, 333].)

[7]The motion to dismiss for failure to state a claim is the federal equivalent of the general demurrer. (See rule 12, Fed. Rules Civ. Proc., 28 U.S.C.)

gant or by an attorney. Where a section 1983 complaint is drafted by a pro. per. litigant, it is held "to less stringent standards than formal pleadings drafted by lawyers . . . ." (*Haines* v. *Kerner* (1972) 404 U.S. 519, 520 [30 L.Ed.2d 652, 654, 92 S.Ct. 594]; followed in *Hughes* v. *Rowe, supra,* 449 U.S. 5.)

■ In *Cohen* v. *Illinois Institute of Technology* (7th Cir 1978) 581 F.2d 658, certiorari denied (1979) 439 U.S. 1135 [59 L.Ed.2d 97, 99 S.Ct. 1058], the court summarized the rules prevailing in the circuits with respect to review of a section 1983 complaint prepared by counsel, as follows: "The controlling standard, as set forth in *Conley* v. *Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), is that an action may be dismissed for failure to state a claim only if it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Furthermore, a pleading is insufficient to state a claim under the Civil Rights Act if the allegations are mere conclusions. *Place v. Shepherd,* 446 F.2d 1239, 1244 (6th Cir. 1971); *Kennedy v. Landing,* 529 F.2d 987, 989 (9th Cir. 1976). Some particularized facts demonstrating a constitutional deprivation are needed to sustain a cause of action under the Civil Rights Act. *Kadlec v. Illinois Bell Telephone Co.,* 407 F.2d 624, 627 (7th Cir.), *cert. denied,* 396 U.S. 846, 90 S.Ct. 90, 24 L.Ed.2d 95 (1969). See *Cannon,* 559 F.2d at 1069; and *Adams v. Pate,* 445 F.2d 105 (7th Cir. 1971). *See also Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir. 1976); *Kauffman v. Moss,* 420 F.2d 1270, 1275 & n. 13 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Anderson v. Sixth Judicial District Court,* 521 F.2d 420, 420-21 (8th Cir. 1975.)" (*Id.,* at p. 663; see also *Wise* v. *Bravo* (10th Cir. 1981) 666 F.2d 1328, 1333; *Fisher* v. *Flynn* (1st Cir. 1979) 598 F.2d 663, 665; *Ostrer* v. *Aronwald* (2d Cir. 1977) 567 F.2d 551, 553; *Whelehan* v. *County of Monroe* (W.D.N.Y. 1983) 558 F.Supp. 1093, 1100, fn.5.)

■ With this framework of pleading rules in place, we turn first to plaintiff's allegations against Deputy District Attorney Carrington individually.

## II

Plaintiff recognizes that in *Imbler* v. *Pachtman* (1976) 424 U.S. 409 [47 L.Ed.2d 128, 96 S.Ct. 984], the Supreme Court held "that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." (*Id.,* 424 U.S. at p. 431 [47 L.Ed.2d at p. 144].) The court reasoned that "If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious

prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. [Citations.] Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law." (*Id.*, 424 U.S. at pp. 424-425 [47 L.Ed.2d at p. 140].) Redress for the wilful deprivation of constitutional rights by a prosecutor, the court explained, could be achieved by prosecution of the offender or by discipline imposed by official state bar organizations. (*Id.*, 424 U.S. at p. 429 [47 L.Ed.2d at pp. 142-143.].)

However, the zone of prosecutorial immunity is not unbounded. "[I]mmunity analysis rests on functional categories, not on the status of the defendant." (*Briscoe* v. *LaHue* (1983) 460 U.S. 325, 342 [75 L.Ed.2d 96, 112, 103 S.Ct. 1108].) The Supreme Court acknowledged the boundary question in *Imbler*, observing that acts of a prosecutor not intimately associated with the judicial phase of the criminal process might not qualify for immunity. (*Imbler, supra,* 424 U.S. at pp. 430-431 [47 L.Ed.2d at pp. 143-144].) The *Imbler* decision explicitly leaves open the question of immunity for acts "in the role of an administrator or investigative officer rather than that of advocate." (*Ibid.*) Here, plaintiff contends his complaint should survive because it contains allegations that Carrington investigated the prosecution before participating in it.

Perhaps the leading example of nonimmune prosecutor action is *Hampton* v. *City of Chicago* (7th Cir. 1973) 484 F.2d 602, certiorari denied (1974) 415 U.S. 917 [39 L.Ed.2d 471, 94 S.Ct. 1413, 1414].[8] In *Hampton* the plaintiffs alleged that prosecutors had planned and participated in an illegal raid of Hampton's residence which resulted in the unprovoked killing of Hampton and Mark Clark and the wounding of four other plaintiffs. (*Id.,* at pp. 606-607.) The *Hampton* court held the conduct of planning and executing the illegal search and seizure was analogous to the conduct of police

---

[8]*Hampton* is cited with apparent approval in *Briscoe, supra,* 460 U.S. at page 342, footnote 28 [75 L.Ed.2d at p. 112] and in *Imbler, supra,* 424 U.S. at page 430, footnote 31 [47 L.Ed.2d at p. 143]. (Also see generally federal cases collected in Annot., Actionability, Under 42 U.S.C.S. § 1983, of Claims Against Persons Other than Police Officers for Unlawful Arrest or Imprisonment (1979) 44 A.L.R.Fed. 225, § 4, pp. 240-244; state cases collected in Annot., Immunity of Prosecuting Attorney or Similar Officer from Action for False Arrest or Imprisonment (1977) 79 A.L.R.3d 882.)

officials, in which role only limited "good faith immunity" is appropriate. Observing that "the availability of immunity depends on the character of the conduct under attack," the court held this conduct not within the fully protected zone accorded to the prosecutorial role. (*Id.*, at pp. 608-609.)

Although plaintiff alleges Carrington failed or refused adequately to investigate the facts and law pertaining to the misdemeanor charge, he has not brought Carrington's conduct within the *Hampton* exception to absolute prosecutorial immunity. That exception is available only when a prosecutor undertakes acts ordinarily performed by police officers and those acts unlawfully cause harm to a defendant that is independent of the harm caused by an unfounded prosecution. (See e.g., *Guerro* v. *Mulhearn* (1st Cir. 1974) 498 F.2d 1249, 1256; *Robichaud* v. *Ronan* (9th Cir. 1965) 351 F.2d 533, 537.) In *Hampton*, for example, the court specifically equated the conduct of the state's attorney with that of police officers. (*Hampton, supra,* 484 F.2d at p. 609.) Moreover, the violation of Hampton's Fourth Amendment rights, which occurred as a consequence of the raid, was independent of the harm caused by the filing and prosecution of charges.

Here plaintiff has failed to allege conduct by Carrington that bears any resemblance to the duties of police officers. Nor has plaintiff alleged that he was harmed during the investigatory phase of the prosecution in any manner that is independent of the harm allegedly caused by the prosecution itself. Rather, the harm alleged by plaintiff flows entirely from the action of the prosecutor in filing and pursuing criminal charges. Plaintiff essentially alleges Carrington participated in an investigation that disclosed the prosecution was unwarranted but he prosecuted nonetheless. This action is at the core of the immunity zone. "An essential purpose of the doctrine is to give [the prosecutor] freedom to exercise his discretion and to perform his official duties without fear that his conduct will be called into question at an evidentiary hearing or subject him to personal liability." (*Hampton, supra,* 484 F.2d at p. 607.)

If plaintiff's assertions suffice to make a prosecutor liable for his conduct, the doctrine of prosecutorial immunity authorized by *Imbler* is hollow law. Any litigant could evade the immunity bar with ease by attacking the prosecutor's decision to file criminal charges as a consequence of bad judgment in the course of the antecedent investigative phase. ■ We follow federal cases that recognize the Civil Rights Act does not make a prosecutor personally liable for acts undertaken in the investigatory phase of a prosecution where the acts do not result in harm independent of the prosecution itself or where the prosecutor does not assume the role of a police officer. (*Freeman on Behalf of the Sanctuary* v. *Hittle* (9th Cir. 1983) 708 F.2d 442; *Atkins* v. *Lanning* (10th Cir. 1977) 556 F.2d 485, 488.)

 On appeal plaintiff relies on two other facets of his complaint to get him over the prosecutorial immunity bar. He submits that the allegation that Carrington conspired with the city defendants suffices. Alternately, he submits the complaint taken as a whole reveals Carrington acted in the context of an actual conflict of interest and this circumstance lies within an exception to the immunity doctrine. Neither argument is persuasive.

Plaintiff's conspiracy argument places principal reliance on *Rankin* v. *Howard* (9th Cir. 1980) 633 F.2d 844, certiorari denied *Zeller* v. *Rankin* (1981) 451 U.S. 939 [68 L.Ed.2d 326, 101 S.Ct. 2020].[9] In that case a judge privately agreed to grant a guardianship petition if filed to facilitate a conspiracy to "deprogram" the plaintiff, an adult member of the Unification Church. *Rankin* held such a prior agreement by a judicial officer to be outside the ambit of judicial immunity. (*Id.,* at pp. 846-847.) Assuming arguendo *Rankin* is good law, it is inapplicable to this case.

A judge has no proper occasion to agree to give up judicial impartiality in future proceedings. Accordingly, the *Rankin* exception to judicial immunity may be workable as a narrow incursion which does not threaten to swallow up the immunity doctrine. A prosecutor, however, almost invariably will invoke and pursue criminal proceedings as the People's advocate at the behest of some person outside his office. If such an "agreement" to file charges (denominated a conspiracy) is an adequate embellishment to take the pleader past the bar of *Imbler,* the doctrine of prosecutorial immunity will be eviscerated. Indeed, although the issue of conspiracy was not explicitly discussed in *Imbler,* there the court upheld the dismissal of a complaint that alleged a conspiracy among police officers and a deputy district attorney unlawfully to charge and convict plaintiff of a criminal offense. (*Imbler* v. *Pachtman, supra,* 424 U.S. at pp. 415-416 [47 L.Ed.2d at p. 135].) Accordingly, we conclude that the allegation of a conspiracy between a prosecutor and others to file and pursue unfounded charges is not sufficient to state a claim or cause of action under section 1983. (*Id.,* see *Agnew* v. *Moody* (9th Cir. 1964) 330 F.2d 868, 869, cert. den. (1964) 379 U.S. 867 [13 L.Ed.2d 70, 85 S.Ct. 137]; *Friedman* v. *Younger* (C.D.Cal. 1968) 282 F.Supp. 710, 716.)

Plaintiff's final sally at Carrington is that the prosecutor's conduct is subject to a conflict of interest exception to the immunity bar. *Beard* v. *Udall* (9th Cir. 1981) 648 F.2d 1264, is the sole authority cited in support of this claim. In *Beard* the part-time prosecutor in a rural area was also engaged in private practice. (*Id.,* at p. 1266.) In the course of representing his sec-

---

[9]But see *Dennis* v. *Sparks* (1980) 449 U.S. 24, 27 [66 L.Ed.2d 185, 189, 101 S.Ct. 183], which case *Rankin* distinguishes. (See *Rankin, supra,* 633 F.2d at p. 847, fn. 9.)

retary in a child custody dispute, he caused baseless criminal charges to be filed against his secretary's ex-husband for kidnaping the children. (*Id.*, at pp. 1266-1267.) The *Beard* court held this conduct unprotected by prosecutorial immunity on the ground that the "actual" conflict of interest stripped the prosecutor of his immunity garb. (*Id.*, at p. 1271.)

Assuming arguendo *Beard* is good law it is unavailing on the facts pleaded here. The *Beard* court explicitly emphasized its holding "is a narrow one." (*Id.*, at p. 1271.) We construe the case with this admonition in mind and conclude *Beard* should be limited to cases in which an attorney undertakes representation of the state even though the attorney has a legal and ethical conflict of interest because of his or her representation of another client.

That conflict is not present here. The gist of plaintiff's claim is that Carrington was subject to a conflict of interest because he had previously conspired with the other defendants to pursue unfounded criminal charges. Once again the argument proves too much. If a prior agreement to pursue unfounded criminal charges is an "actual" conflict of interest within the meaning of *Beard,* virtually every unsuccessful prosecution will give rise to a triable issue of the prosecutor's personal liability and the exception to the immunity doctrine will become the rule.

We hold plaintiff has not pleaded sufficient facts to hold Carrington personally liable on any theory; Carrington's demurrer was properly sustained without leave to amend. (*Imbler* v. *Pachtman, supra,* 424 U.S. 409; *Whelehan* v. *County of Monroe, supra,* 558 F.Supp. at pp. 1100-1101.)

### III

 Plaintiff contends he has snared the county in his pleading net regardless of his success with Carrington. He relies upon his allegations that the county acted pursuant to the Oroville Earthquake Resolution and that the criminal prosecution was done pursuant to the county's "unconstitutional and illegal laws, policies, procedures, regulations, rules, habits, customs, and usages."[10] A municipality's policy or custom resulting in constitutional injury may be actionable even though the individual public servants are shielded by good faith immunity. (*Owen* v. *City of Indepen-*

---

[10]Plaintiff apparently recognizes our prior holding that "the doctrine of respondeat superior has no application in suits [under the federal Civil Rights Act]; a governmental entity is not liable solely because it employs a tortfeasor [citation]. Rather a local governing body is liable under 42 United States Code section 1983 only when, through its agents or employees, it implements or executes official policy resulting in a constitutional deprivation [citation]." (*Federer* v. *County of Sacramento* (1983) 141 Cal.App.3d 184, 186-187 [190 Cal.Rptr. 187].)

*dence* (1980) 445 U.S. 622, 638 [63 L.Ed.2d 673, 685-686, 100 S.Ct. 1398]; *Monell* v. *New York City Dept. of Soc. Serv.* (1978) 436 U.S. 658, 690-691 [56 L.Ed.2d 611, 635-636, 98 S.Ct. 2018].) However, plaintiff's conclusionary allegation lacks sufficient specificity to pass muster.

■ For purposes of determining whether a public entity can be held liable under section 1983, "It is elementary that a municipality can only act through its high level, supervisory officials." (*Leite* v. *City of Providence* (D.R.I. 1978) 463 F.Supp. 585, 589; see generally Comment, *Monell and Owen in the Police Injury Context: Municipal Liability Under Section 1983 Without Supervisorial Fault* (1982) 16 U.S.F. L.Rev. 517.) In order to plead a section 1983 claim against governmental defendants for the tortious conduct of employees under federal law, it is necessary at a minimum to allege the conduct occurred in execution of a government's policy or custom promulgated either by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. (*Whelehan* v. *County of Monroe, supra,* 558 F.Supp. at pp. 1102-1103; see *Quinn* v. *Syracuse Model Neighborhood Corp.* (2d Cir. 1980) 613 F.2d 438, 448 [complaint sufficiently alleged plan by mayor to hold plaintiff wrongfully responsible for missing public funds].)[11]

■ In the instant action, plaintiff has failed to plead that any "custom" of Butte County was promulgated either by the county's lawmakers or by those whose edicts or acts may fairly be said to represent official policy. Paragraph IV of plaintiff's second cause of action, where allegations concerning the "custom" of defendants are set forth, contains a specific reference to the Earthquake Resolution of the City of Oroville; there is no other allegation remotely related to any "custom." However, a resolution of a city is not an expression of policy or custom of the county in which the city is located; the entities are independent and within their respective spheres they are free to have differing or conflicting policies. (See *In re Knight* (1921) 55 Cal.App. 511, 517 [203 P. 777].) The city's earthquake resolution does not constitute the county's custom.

When we examine plaintiff's allegation of official custom in the context of the facts alleged in the rest of plaintiff's complaint, the only other basis on which official custom might be asserted is upon the assumption that the

---

[11]Discussing liability of a municipality under the federal Civil Rights Act based on "custom," the California Court of Appeal for the Fifth Appellate District recently noted, "If the plaintiff seeks to show he was injured by governmental 'custom,' he must show that the governmental entity's 'custom' was 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, . . .'" (*Heffington* v. *County of Stanislaus* (1983) 143 Cal.App.3d 838, 841 [192 Cal.Rptr. 202], quoting *Monell* v. *New York City Dept. of Soc. Serv., supra,* 436 U.S. at p. 694 [56 L.Ed.2d at p. 637].)

acts of Carrington, a deputy district attorney, might be said to constitute official policy or custom of the County of Butte. The federal courts have recognized that local elected officials and appointed department heads can make official policy or create official custom sufficient to impose liability under section 1983 on their governmental employers. (See e.g., *Universal Amusement Co., Inc.* v. *Hofheinz* (5th Cir. 1981) 646 F.2d 996, 997, rehg. den. (1981) 655 F.2d 1131; *Quinn* v. *Syracuse Model Neighborhood Corp., supra,* 613 F.2d 438.)

In line with these federal decisions, *Heffington* v. *County of Stanislaus, supra,* 143 Cal.App.3d at page 844, held that the district attorney of the county was someone whose acts or edicts represented official policy. We think it unwise to extend *Heffington's* doctrine to deputy district attorneys. If the acts of municipal employees other than elected representatives or departmental supervisors are held to constitute official policy sufficient to impose federal Civil Rights Act liability on municipalities, then municipalities will be routinely liable for the tortious acts of their employees that violate constitutional rights. Such a result would run counter to the teachings of *Monell* that there is no respondeat superior liability under section 1983. (See *Monell* v. *New York City Dept. of Soc. Serv., supra,* 436 U.S. at p. 691 [56 L.Ed.2d at p. 636].)

Moreover, if we hold that the acts of a deputy prosecutor constitute the "custom" or "policy" of local governmental agencies, we invite end runs around the prosecutorial immunity doctrine. We are mindful that one policy underlying the doctrine of prosecutorial immunity is that a prosecutor will "perform his official duties without fear that his conduct will be called into question at an evidentiary hearing . . . ." (*Hampton* v. *City of Chicago, supra,* 484 F.2d at p. 607.) Even if the local governmental entity, and not the deputy prosecutor, were the target defendant, the prosecutor would face an ex post facto grilling involving his prosecutorial judgment; the chilling effect on prosecutions would still be significant. We therefore hold that the acts of a deputy prosecutor cannot be said to represent official policy or custom sufficient to make the prosecutor's public employer liable under section 1983. (*Monell* v. *New York City Dept. of Soc. Serv., supra,* 436 U.S. at p. 694 [56 L.Ed.2d at pp. 637-638].)[12]

All in all, when we scan the complaint, we find the only arguable bases on which the county's liability could be predicated are enactment and en-

---

[12]So that we are not misunderstood, we add that we do not suggest that deputy prosecutors cannot unlawfully *participate* in official custom or policy sufficient to hold a public entity liable under the Civil Rights Act; we do suggest that the acts of deputy prosecutors, in and of themselves, cannot *create* actionable official policy or custom sufficient to make a public entity liable under section 1983.

forcement of the earthquake resolution or the acts of Deputy District Attorney Carrington. Neither is sufficient as a matter of law. (*Imbler* v. *Pachtman, supra,* 424 U.S. 409; *Monell* v. *New York City Dept. of Soc. Serv., supra,* 436 U.S. 658; *Whelehan* v. *County of Monroe, supra,* 558 F.Supp. 1093.) ██ ██ Since the demurrer was to the fourth amended complaint prepared by an attorney, we are convinced beyond doubt that plaintiff can prove no set of facts in support of his claims against Carrington or the county which would entitle him to relief. (*Conley* v. *Gibson,* (1957) 355 U.S. 41 at pp. 45-46 [2 L.Ed.2d 80 at p. 84, 78 S.Ct. 99].) The demurrer was properly sustained without leave to amend.

The judgment is affirmed.

Puglia, P. J., and Evans, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 15, 1983. Bird, C. J., was of the opinion that the petition should be granted.