Filed 9/10/20  Kennedy v. Ramirez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RON KENNEDY, <br>     Plaintiff and Appellant, <br> v. <br> LOURDES CASTRO RAMÍREZ, as Secretary, etc., et al., <br>     Defendants and Respondents. | A158770 <br><br> (San Francisco County <br> Super. Ct. No. CPF-19-516639) |

The Medical Board of California (the Board) began investigating psychiatrist Ron Kennedy, M.D. after receiving reports he wrote medically unjustified vaccine exemptions for school-aged children.  During the investigation, the Board issued administrative subpoenas to school districts where exemptions had been reported (Gov. Code, 11180, et seq.)[1]  The districts complied, producing 50 vaccine exemptions issued by Kennedy.

---

[1] Undesignated statutory references are to the Government Code. These subpoenas are also called investigative subpoenas.  (See *Kennedy v. Superior Court* (2019) 36 Cal.App.5th 306, 310 (*Kennedy*); *Pating v. Board of Medical Quality Assurance* (1982) 130 Cal.App.3d 608, 617.)  We use the terms interchangeably.

Kennedy filed a lawsuit against several defendants, including Board employees. He alleged defendants violated the federal and state Constitutions, and several state statutes, by issuing the subpoenas without giving him—or his patients—prior notice. The trial court sustained defendants' demurrer without leave to amend and dismissed the complaint.

We affirm. We conclude Kennedy failed to state a claim for relief against defendants premised on the Board's issuance of the investigative subpoenas without prior notice to Kennedy or his patients.

FACTUAL AND PROCEDURAL BACKGROUND

As relevant here, Senate Bill No. 277 (2015–2016 Reg. Sess.) "eliminated the personal beliefs exemption from the requirement that children receive vaccines for specified infectious diseases before being admitted to any . . . elementary or secondary school." (*Brown v. Smith* (2018) 24 Cal.App.5th 1135, 1139 (*Brown*).) The statute retains a medical exemption. "A student is exempt from the requirement if a licensed physician states in writing that 'the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe.' " (*Love v. State Dept. of Education* (2018) 29 Cal.App.5th 980, 986, quoting Health & Saf. Code, § 120370, subd. (a).)

The medical exemption provides: " 'If the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances, including, but not limited to, family

2

medical history, for which the physician does not recommend immunization, that child shall be exempt from the [immunization] requirements . . . to the extent indicated by the physician's statement.' " (*Brown supra,* 24 Cal.App.5th at p. 1139, fn. 2.)

## A.

### *The Board Begins an Investigation*

Kennedy is a psychiatrist who operates an antiaging clinic in Santa Rosa.  In 2017, the Board began receiving complaints—including a complaint from at least one county health department—that Kennedy was issuing vaccine exemptions for school-aged children without medical justification. The Board opened an investigation.

The Board served Kennedy with investigative subpoenas for medical records of three children for whom he provided vaccination exemptions. Kennedy refused to comply with the subpoenas and the Board petitioned to compel his compliance.  The trial court granted the petition.  It found good cause for the issuance of the subpoenas and concluded the subpoenas were relevant and material to the Board's investigation of whether Kennedy was improperly issuing blanket vaccine exemptions in violation of the standard of care.  Kennedy petitioned for a writ of supersedeas to stay the order pending appeal.

A division of this court denied the petition.  (*Kennedy*, *supra,* 36 Cal.App.5th 306.)  Our colleagues observed the Board's power to "investigate complaints against physicians . . . would be hamstrung if a physician could force the Board to bring a court action to enforce a subpoena, then obtain an automatic stay of an adverse order pending a subsequent appeal." (*Id.* at pp. 309–310.)  The court declined to issue a discretionary stay, observing it "would likely conclude that the superior court acted within

3

its discretion in finding the Board's interest in obtaining records of vaccination exemptions outweighed the patients' privacy rights, given that the Board must keep the records confidential." (*Id.* at p. 310.) Kennedy appealed the trial court's orders, but later dismissed the appeal.

B.

*Kennedy Files a Lawsuit*

The Board also issued investigative subpoenas to 12 school districts where exemptions had been reported but where the identities of the children were unknown. The districts complied with the subpoenas, producing 50 vaccine exemptions issued by Kennedy. Most exemptions were written on preprinted forms and provided permanent exemptions for all vaccinations.

Kennedy filed a lawsuit against the secretary of the State of California Business, Consumer Services and Housing Agency, two employees of the California Department of Consumer Affairs and several employees of the Board (collectively, defendants) for declaratory and injunctive relief, and for an order quashing the subpoenas. The gist of the operative first amended complaint (complaint) was defendants singled Kennedy out for "selective prosecution" because he is not a pediatrician, and that they issued the subpoenas to harass him "for providing vaccine exemptions."

The complaint alleged defendants violated the Fourth Amendment of the federal Constitution, article I of the state Constitution, and Health and Safety Code section 120440 and Education Code section 49076 by issuing the subpoenas "without notice to [him]" or "to the parents of the children in question." According to the complaint, the federal and state Constitutions required defendants to provide him with "a copy of every subpoena seeking [the] medical records generated by [him]" so he could exercise his Fourth Amendment rights, and to enable him to challenge the subpoenas based on

4

his patients' privacy rights under the California Constitution and state statutes.

Kennedy sought to enjoin the Board from investigating him—or commencing disciplinary proceedings against him—based on the records obtained in response to the subpoenas.[2] He also requested a mandatory injunction ordering defendants to return the immunization exemptions to the school districts. Finally, Kennedy alleged a declaratory relief claim seeking an order declaring the subpoenas "illegal and unconstitutional" and any actions taken by the defendants against him "null and void."

## C.

### *The Court Sustains Defendants' Demurrer*
### *Without Leave to Amend*

Defendants demurred. As relevant here, defendants argued Kennedy could not state a claim for relief because they had no obligation to notify him of the subpoenas. Defendants also contended Kennedy's constitutional rights were not violated, and that his patients' privacy rights were protected by statutes governing the confidentiality of the investigation. In opposition, Kennedy argued he was entitled to "intervene and preserve the [p]rivacy of his clients' medical records."

The court sustained the demurrer without leave to amend, concluding Kennedy failed to state a cause of action against defendants. It noted a physician may have standing to protect his patients' privacy rights, but that Kennedy was not asserting his patients' rights. Instead, Kennedy was seeking to "hamstring or obstruct" the Board's investigation. As the court explained, Kennedy had no "right to notice and an opportunity to intervene in

---

[2] Kennedy sought an injunction pursuant to 42 United States Code section 1983 and Code of Civil Procedure sections 526 and 527.

5

the Board's investigation *before* it has completed that investigation and determined that disciplinary proceedings are warranted." The reason Kennedy had no right to notice and an opportunity to object, the court observed, was due to the "fundamental difference between a confidential investigative process, which often does not result in formal charges, and a public adjudicatory proceeding, which can lead to discipline."

According to the court, Kennedy did not have a property interest or license "at stake" during the investigation. The court opined the Board's "fledgling investigation" did not trigger a "full panoply of constitutional protections" because Kennedy would not be penalized based on the subpoenas, which were "merely one step in the investigative process; if the Board files disciplinary proceedings against [Kennedy], he will be entitled to defend those proceedings" pursuant to the Administrative Procedure Act (§ 11340 et seq.).

The court determined Kennedy failed to show "the Fourth Amendment, California Constitution, or any of the cited statutes required notice to [him] of the subpoenas served on the school districts. . . . Notice to [Kennedy] was unnecessary upon weighing the harm to [him] and his patients against the purpose of the Board's conduct," particularly where such notice "would disrupt the investigative process." Finally, the court held the mandatory confidentiality provisions governing the Board's investigation protected the patients' privacy interests.

The court dismissed the operative complaint and entered judgment for defendants.

## DISCUSSION

"A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a

6

cause of action.  For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law.  We also consider matters that may be judicially noticed. . . .  [¶] When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.'  [Citation.]  Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action."  (*Brown, supra,* 24 Cal.App.5th at pp. 1141–1142.)  " ' "We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory.  [Citations.]  We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale." ' "  (*The Inland Oversight Committee v. City of San Bernardino* (2018) 27 Cal.App.5th 771, 779.)

"[W]hether a subpoena meets the constitutional standards for enforcement is a question of law to be reviewed de novo."  (*Grafilo v. Cohanshohet* (2019) 32 Cal.App.5th 428, 436.)

I.

*General Principles*

The Board is an administrative agency within the Department of Consumer Affairs.  (Bus. & Prof. Code, §§ 101, subd. (b), 2001, subd. (a).)  The Board has a duty to "protect the public against incompetent, impaired, or negligent physicians" (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 7) and "has broad investigative powers to accomplish its mandate, including the authority to issue investigative subpoenas" pursuant to section 11181.  (*Grafilo v. Soorani* (2019) 41 Cal.App.5th 497, 507.)  These subpoenas may be

issued "even when no formal charges have been filed against a physician." (*Id.* at pp. 507–508; *Arnett,* at p. 8.) Records obtained pursuant to administrative subpoenas must be kept confidential during the Board's investigation. (*Kennedy, supra,* 36 Cal.App.5th at p. 310, citing § 11183 and Bus. & Prof. Code, § 2225, subd. (a).)

Section 11181 investigative subpoenas must " 'be issued "in a manner consistent with" ' " the state and federal Constitutions. (*Grafilo v. Soorani, supra,* 41 Cal.App.5th at p. 508.) Investigative subpoenas "are valid as long as they meet the three-part test articulated by our Supreme Court in *Brovelli v. Superior Court* (1961) 56 Cal.2d 524 (*Brovelli*). Specifically, the subpoenas are valid if: (1) they inquire into matters the agency is authorized to investigate; (2) they are 'not too indefinite'; and (3) the information sought is 'reasonably relevant' to the investigation." (*State Water Resources Control Bd. v. Baldwin & Sons, Inc.* (2020) 45 Cal.App.5th 40, 55.) "Trial courts are authorized to enforce investigative subpoenas that are 'regularly issued,' " which means in accordance with various provisions of " 'the Government Code providing for the matters which may be investigated, the acts authorized in connection with  investigations, and the service of process.' " (*Medical Bd. of California v. Chiarottino* (2014) 225 Cal.App.4th 623, 627, fn. 2.)

Here, the Board was authorized to issue the subpoenas to the school districts to fulfill its mandate to protect the health and safety of the public and to investigate complaints that Kennedy was violating the standard of care by issuing vaccine exemptions without medical justification. (*Arnett v. Dal Cielo, supra,* 14 Cal.4th at pp. 7–8; *Medical Bd. of California v. Chiarottino, supra,* 225 Cal.App.4th at pp. 626, 629.)

8

The issue before us is whether Kennedy has stated a claim for relief against defendants premised on their failure to notify him, or his patients, before issuing the subpoenas pursuant to section 11181.  The answer is no.

II.

*No Cause of Action Under 42 United States Code*
*Section 1983*

The complaint's first cause of action sought an injunction pursuant to 42 United States Code section 1983 (Section 1983) enjoining defendants from investigating or prosecuting him based on documents "obtained pursuant to the subpoenas issued to the school districts . . . without notice to [him]."[3]

To state a claim under Section 1983, " 'a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.' " (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1472.)  Because Section 1983 liability requires "a violation of the underlying constitutional right" (*Daniels v. Williams* (1986) 474 U.S. 327, 330), a threshold inquiry is whether the plaintiff has presented an adequate factual basis to establish a deprivation of the constitutional right.  (*Arce,* at pp. 1472–1473; *Berman v. City of Daly City*

_____

[3] The statute provides in relevant part:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  Because "an action under section 1983 is based on federal statutory law, state courts look to federal law to determine what conduct gives rise to an action under the statute." (*Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 560.)  State courts "apply federal law to determine whether a complaint pleads a cause of action under section 1983 sufficient to survive a general demurrer." (*Id.* at p. 563.)

9

(1993) 21 Cal.App.4th 276, 286.)  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678.)  Rather, " '[s]ome particularized facts demonstrating a constitutional deprivation' " are required.  (*Bach v. County of Butte, supra,* 147 Cal.App.3d at pp. 563–564.)

Scattered throughout the complaint are conclusory allegations that Kennedy had a "Fourth Amendment constitutional right" to notice of (and an opportunity to challenge) the subpoenas.  For example, the complaint alleges "administrative subpoenas seeking . . . vaccine exemptions" are "constructive searches" and "are subject to challenges under the Fourth Amendment by Dr. Kennedy."  These allegations fall well short of " 'particularized facts demonstrating a constitutional deprivation.' " (*Bach v. County of Butte*, *supra,* 147 Cal.App.3d at p. 564.)  The complaint does *not* allege facts tending to show Kennedy had a reasonable expectation of privacy in the vaccine exemption documentation, nor that the alleged searches were unreasonable. It is not enough for Kennedy to allege administrative subpoenas constitute searches:  we are not required to accept the truth of legal conclusions. " '[L]egal conclusions,' 'adjectival descriptions' . . . or 'unsupported speculation' " are insufficient to withstand a demurrer.  (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960; *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 555 ["courts 'are not bound to accept as true a legal conclusion couched as a factual allegation' "].)

Kennedy cannot cure this pleading deficiency.  The Fourth Amendment to the federal Constitution "prohibits *unreasonable searches and seizures*. However, the Fourth Amendment provides little protection against administrative subpoenas.  The rules relating to search warrants in criminal cases do not apply to administrative subpoenas."  (Asimow, et al., Cal.

Practice Guide:  Administrative Law (The Rutter Group 2019) ¶ 7:36, p. 7-7.) "[F]ormal compliance with classic Fourth Amendment requirements is not necessary in the case of administrative subpoenas."  (*City of Santa Cruz v. Patel* (2007) 155 Cal.App.4th 234, 249.)

As our high court has explained, "Insofar as the prohibition against unreasonable searches and seizures can be said to apply at all [in the context of investigative subpoenas] it requires only that the inquiry be one which the agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant." (*Brovelli, supra,* 56 Cal.2d at p. 529.)  Kennedy does not persuasively challenge the subpoenas as invalid under *Brovelli* and does not establish a court would have invalidated the subpoenas even if he had received notice of them.  (*Kennedy, supra,* 36 Cal.App.5th at p. 310; *State Water Resources Control Bd. v. Baldwin & Sons, Inc.*, *supra,* 45 Cal.App.5th at p. 63 [investigative subpoenas satisfied *Brovelli* factors; declining to adopt a "more stringent standard" merely because appellants asserted a privacy right in the documents].)

Numerous courts have rejected Fourth Amendment challenges to administrative subpoenas.  (*S.E.C. v. Jerry T. O'Brien, Inc.* (1984) 467 U.S. 735, 743 [Fourth Amendment does not require a federal agency to notify target of investigation before serving subpoenas to third parties]; *Craib v. Bulmash* (1989) 49 Cal.3d 475, 485 ["no Fourth Amendment 'privacy' claim can be asserted against an administrative subpoena limited to the production of records which the subpoenaed party is required to maintain, for the express purpose of agency inspection, under lawful statutes or regulations"]; *State ex rel. Dept. of Pesticide Regulation v. Pet Food Express* (2008) 165 Cal.App.4th 841, 854 [administrative subpoena "did not constitute

an unconstitutional search/seizure or a due process violation"]; *Fielder v. Berkeley Properties Co.* (1972) 23 Cal.App.3d 30, 38–40 [administrative subpoenas did not violate prohibition on unreasonable searches and seizures; subpoenas are not "constitutionally invalid" because they fail to comply with Code of Civil Procedure section 1985]; *People v. West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 470–471 [administrative subpoenas did not contravene Fourth Amendment].)[4]

Kennedy's reliance on *City of Los Angeles v. Patel* (2015) 576 U.S. 409 does not establish the investigative subpoenas violated his Fourth Amendment rights. At issue in *Patel* was a municipal ordinance requiring hotel owners to make their guest records available for inspection. The United States Supreme Court considered whether the ordinance fell within "the administrative search exception to the warrant requirement." (*Id.,* at p. 420.) It held "a hotel owner must be afforded an *opportunity* to have a neutral decisionmaker review an officer's demand to search the registry before he or she faces penalties for failing to comply" (*id.* at p. 421) and that the ordinance was "facially unconstitutional because it penalizes [hotel owners] for declining to turn over their records without affording them any opportunity for precompliance review." (*Id.* at p. 412.)

*Patel* has no application here for two reasons: first, this case does not concern the administrative search exception to the warrant requirement; and second, Kennedy faced no penalty if the districts failed to comply with the

_____

[4] The complaint does not allege violations of the Fourth Amendment rights of Kennedy's patients. (*Lewis v. Superior Court* (2017) 3 Cal.5th 561, 578 ["fleeting references" to protections of " 'federal law' were insufficient to preserve [Fourth Amendment] issue"].) And Kennedy does not persuasively advance such an argument on appeal. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

investigative subpoenas. *Patel* does not stand for the proposition that the Board must notify a physician before seeking to obtain evidence, pursuant to section 11181, during a legally authorized investigation of complaints that the physician is violating the standard of care.

At this juncture in the investigation, Kennedy cannot state a Section 1983 claim premised on a violation of his federal due process rights. The Board does not offend the due process clause of federal Constitution by using "subpoena power to gather evidence" without notifying the target of the investigation. (*S.E.C. v. Jerry T. O'Brien, Inc., supra,* 467 U.S. at p. 742; *Smith v. Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 326 [physician had no "protected liberty or property interest" at stake during Board's investigation]; *Alexander D. v. State Bd. of Dental Examiners* (1991) 231 Cal.App.3d 92, 97–98 [order compelling dentist to undergo psychiatric examination did not violate dentist's due process rights].) The subpoenas are an "investigatory tool," and serving them without notifying Kennedy did not implicate his liberty or property interest. (*Alexander D.,* at pp. 97–98.)

Kennedy has not alleged—and cannot allege—a deprivation of a federal right. As a result, he cannot state a Section 1983 claim against defendants. Allegations that the investigative subpoenas violated his patients' privacy rights under the California Constitution cannot support a Section 1983 claim. "[S]ection 1983 protects federal rights, not state rights." (*Sacramento County Deputy Sheriffs' Assn. v. County of Sacramento* (1996) 51 Cal.App.4th 1468, 1485 [alleged violation of California Constitution could not support Section 1983 claim].)

## III.

*No Causes of Action for Injunctive or Declaratory Relief*

The complaint's second and third causes of action seek injunctive and declaratory relief (Code Civ. Proc., §§ 527, 1060) premised on alleged violations of the privacy rights of Kennedy's patients under the California Constitution. According to the complaint, notifying Kennedy of the subpoenas was necessary to enable him to protect his patients' right to privacy under article I, section 1 of the state Constitution.

We assume for the sake of argument Kennedy has third party standing to assert his patients' privacy interests under the California Constitution. (*Lewis v. Superior Court, supra,* 3 Cal.5th at pp. 569–571 [doctor had standing to assert patients' privacy interests in litigation arising out of disciplinary proceedings brought against doctor]; *M.B. v. Superior Court* (2002) 103 Cal.App.4th 1384, 1392–1393 [targets of grand jury investigation may have standing to challenge criminal grand jury subpoena seeking records held by third party]; *Wood v. Superior Court* (1985) 166 Cal.App.3d 1138, 1145 [doctors had standing to challenge administrative subpoenas on grounds they violated patients' privacy interests], overruled on another point as stated in *Williams v. Superior Court* (2017) 3 Cal.5th 531, 557–558 & fn. 8.)

But we conclude Kennedy's declaratory and injunctive relief claims fail because he has not alleged a violation of his patients' constitutional right of privacy. "The California Constitution provides that all individuals have a right to privacy . . . . A person's medical history and information and the right to retain personal control over the integrity of one's body is protected under the right to privacy." (*Love v. State Dept. of Education, supra,* 29 Cal.App.5th at p. 993.) A "party claiming a violation of the constitutional

14

right of privacy established in article I, section 1 of the California Constitution must establish (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest." (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 338.) These " ' "threshold elements" [are] utilized to screen out claims that do not involve a significant intrusion on a privacy interest protected by the state constitutional privacy provision.' . . . This initial inquiry is necessary to 'permit courts to weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant.' " (*Lewis v. Superior Court, supra,* 3 Cal.5th at p. 571.)

The complaint does not state a claim for relief premised on the alleged infringement of the constitutionally protected privacy rights of Kennedy's patients. The complaint does not allege Kennedy's patients have a legally protected privacy interest in the vaccine exemption documentation. Nor does the complaint allege Kennedy's patients have a reasonable expectation of privacy in the documents reflecting vaccine exemptions they submitted to the school districts. (Health & Saf. Code, § 120370, subd. (a); *Love v. State Dept. of Education, supra,* 29 Cal.App.5th at p. 993 [rejecting argument that requiring children to reveal personal medical information to attend school violated their constitutional right to privacy].) The complaint does not allege the act of serving the subpoenas constituted a serious invasion of the patients' privacy. We need not accept the complaint's conclusory allegation that "obtaining vaccine exemptions without parental consent and without giving notice . . . violates the California Constitution."

Granting leave to amend would be an idle act.[5]  When reviewing a trial court's sustaining of a general demurrer, we focus on the "actual gravamen" of the complaint (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387) and the facts it alleges.  (*Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.* (2002) 95 Cal.App.4th 1273, 1281.)  Kennedy's complaint seeks: (1) to enjoin the Board from investigating or disciplining him based on the documents obtained in response to the subpoenas; (2) a mandatory injunction ordering defendants to return the immunization exemptions to the school districts; and (3) an order invalidating the subpoenas and nullifying defendants' actions.

The gravamen of the complaint is that *Kennedy's* rights were violated when the Board subpoenaed vaccine exemptions from the school districts without giving *him* prior notice.  Repeated references to Kennedy's patients, "medical records" and "privacy privilege" fail to mask that Kennedy's request for injunctive and declaratory relief seeks to preclude the Board from investigating or disciplining him based on the vaccine exemption documentation.  Kennedy's lawsuit seeks to protect his own interests, not his patients' privacy concerns.

---

[5] It is Kennedy's "burden to show a reasonable possibility the complaint can be amended to state a cause of action."  (*Brown, supra,* 24 Cal.App.5th at pp. 1141–1142.)  He has failed to satisfy this burden.  His opening brief does not seek leave to amend, but rather a remand for the court to "issue the injunction and grant the declaratory relief . . . barring defendants from using the illegally obtained evidence."  His reply brief devotes one sentence to this issue.  (*Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 580 [demurrer properly sustained without leave to amend; plaintiff offered "no new allegations supporting the possibility of amending the [complaint] to cure its defects, and no legal authority showing the viability of any potential causes of action against [the defendant]"].)

Having reached this conclusion, we need not address defendants' argument that the complaint does not state a claim because "Board investigation files are maintained in confidence."

IV.

Kennedy also sought relief premised on defendants' alleged violation of two statutes: Health and Safety Code section 120440 and Education Code section 49076. According to Kennedy, these statutes required defendants to give him notice of the subpoenas so he could "invoke his patient's . . . privacy rights in the records."

This argument is forfeited. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) "When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited." (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066.)

Kennedy's fleeting references to—and overly simplistic description of—the statutes do not satisfy his burden to demonstrate error. It is simply not enough for Kennedy to claim the statutes prohibit defendants from "doing what they did." It is not our job to find legal authority for Kennedy's conclusory claim that these statutes required the Board to notify him before issuing the investigative subpoenas. (*Medical Bd. of California v. Chiarottino, supra,* 225 Cal.App.4th at p. 632 [deeming argument "waived and abandoned" where appellant failed to cite supporting legal authority].) We will not disturb the trial court's conclusion that the allegations premised

on Health and Safety Code section 120440 and Education Code section 49076 do not furnish a basis for liability against defendants.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____

Jones, P. J.

WE CONCUR:

_____

Simons, J.

_____

Needham, J.

A158770