[No. B080103. Second Dist., Div. Three. Nov. 8, 1995.]

TODD B. SCRUTON, a Minor, etc., et al., Plaintiffs and Appellants, v. KOREAN AIR LINES CO., LTD., Defendant and Respondent; ROBERT L. BEAL et al., Interveners and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions deleted are noted by the insertion of the following symbol at the points of omission [[ ]].

**COUNSEL**

Paul A. Franklin and Patrick Talbot Hall for Plaintiffs and Appellants.

Speiser, Krause, Madole & Cook and Juanita M. Madole for Interveners and Appellants.

Condon & Forsyth, Stephen R. Ginger, Tompkins, Harakas, Elsasser & Tompkins, George N. Tompkins, Jr., Andrew J. Harakas and George N. Tompkins III for Defendant and Respondent.

**OPINION**

**ALDRICH, J.—**

### INTRODUCTION

Plaintiff Terry Van Ryn, as guardian ad litem of two minor children, has appealed from the trial court rulings granting the motion of defendant Korean Air Lines Co., Ltd. (KAL) to enforce a compromise of the minors'

claims against KAL and approving the settlement. In 1983, Rebecca Scruton, the sole parent of the minors, was a passenger on KAL flight 007 and died when the plane was shot down by Soviet fighter jets. As the minors' guardian ad litem and administrator of the decedent's estate, Van Ryn brought this action for wrongful death and personal injury against KAL and others. The parties agreed to settle the minors' claims for a total of $500,000. Pursuant to Code of Civil Procedure section 372,[1] Van Ryn filed petitions for approval of the compromise. However, before the hearing on her petitions, new information was revealed which Van Ryn felt affected the settlement. Van Ryn withdrew the petitions, causing KAL to file a motion to enforce the settlement agreement. The trial court granted KAL's motion and approved the compromise.

In her appeal, Van Ryn contends under the California statutory scheme for settlements of minors' claims, the guardian ad litem may repudiate compromises at any time before trial court approval. Van Ryn also contends, once she repudiated the tentative settlement, neither the trial court nor KAL had the power to enforce it. We hold, pursuant to section 372, a guardian ad litem may repudiate a tentative compromise of a minor's claim before trial court endorsement. Once repudiated, the trial court may only unilaterally enforce the compromise after finding the guardian acted contrary to the minor's best interests.[2] Because the trial court failed to make such a finding, the judgment with respect to settlement of the minors' claims is reversed.

[[ ]]*

### FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 1983, KAL flight 007 was shot down over the Sea of Japan by a Soviet SU-15 interceptor aircraft.[3] All 269 people on board were killed, including Rebecca Scruton. The flight was bound for Seoul, South Korea, from New York with a stopover in Anchorage, Alaska. At the time of the crash, the flight was more than 300 nautical miles off course and illegally in Soviet airspace.

---

[1] Hereinafter, all statutory references shall be to the Code of Civil Procedure unless otherwise noted.

[2] The claim for predeath pain and suffering brought on behalf of the decedent by Van Ryn as administrator of the decedent's estate is not considered in this appeal which addresses *solely* the issue of enforceability of the compromise of the minors' claims.

*See footnote, *ante*, page 1596.

[3] Van Ryn and KAL agree the jury verdict finding KAL guilty of willful misconduct in *In re Korean Air Lines Disaster of September 1, 1983* (D.C. Cir. 1991) 932 F.2d 1475 [289 App.D.C. 391], is binding on the parties. Hence, we rely on the facts as set forth in that opinion.

On July 23, 1984, Van Ryn filed the instant personal injury and wrongful death action against KAL and Litton Systems, Inc.,[4] doing so in her capacity as administrator of the estate of Rebecca Scruton and guardian ad litem of the minor children of the deceased, Todd B. and Alicia Mae Scruton (at the time, ages 6 and 2, respectively). Meanwhile, the many actions filed against KAL around the country were consolidated and tried in the federal District Court for the District of Columbia. (*In re Korean Air Lines Disaster of September 1, 1983* (S.D.N.Y 1992) 807 F.Supp. 1073, 1079.) On May 3, 1985, at the behest of KAL, this action was stayed pending termination of the consolidated federal actions.

At trial in the federal consolidated actions, the plaintiffs proceeded on the theory the crew of flight 007 was aware, either before leaving Anchorage or shortly thereafter, a programming error existed in the plane's inertial navigation system. Rather than to turn back and face discipline, the crew decided to cover up the problem by fabricating the plane's location reports to the air traffic controllers. The jury found KAL guilty of willful misconduct and awarded damages to the 137 plaintiffs. (*In re Korean Air Lines Disaster of September 1983, supra*, 932 F.2d at pp. 1476-1477, 1481 (hereinafter *In re KAL*).)

In May 1991, the District of Columbia Circuit Court of Appeals upheld the jury's liability verdict, but vacated the award of punitive damages. (*In re KAL, supra*, 932 F.2d at p. 1490.) On August 4, 1992, after all the appeals became final, the court herein lifted its stay.

On March 18, 1993, Van Ryn filed petitions for compromise of the minors' disputed claims pursuant to section 372, indicating KAL had offered to pay the minors $250,000 each for the loss of support and of care, comfort, society and guidance of their mother. Two weeks later, Van Ryn informed KAL she was *withdrawing her consent to settle*. Van Ryn's attorney explained, as the result of a jury verdict in favor of the plaintiffs ($400,000 for predeath pain and suffering and $320,000 for loss of society) rendered in a flight 007 action in the United States District Court for the Eastern District of Michigan, and the many jury verdicts throughout the country which exceed the proposed $250,000 settlement here, coupled with the potentially huge prejudgment interest accumulated here, she could no longer represent to the court that the settlement was fair and reasonable.

KAL proceeded to file a motion in the trial court to enforce the settlement agreement. Acknowledging ". . . the policies and principles that apply when

---

[4]Litton Systems, Inc., manufacturer of flight 007's navigational equipment, is not a party to this appeal.

litigation involves adult parties differ somewhat from those instituted when a minor is involved," and "[e]ven though the approval of the court in which the case is pending is essential to a valid compromise made on behalf of a minor, . . ." KAL claimed the agreement was binding and enforceable.

At the hearing on KAL's motion for enforcement, the court concluded it had a responsibility to determine whether the settlement was fair to protect the minors, but that the guardian ad litem cannot reject the agreement at any time before the court rules on the petition, if the compromise is "in the best interest of the minor." On September 16, 1993, the trial court entered an order reflecting this ruling. As to the petitions for approval, the court found Van Ryn's attorney had justified the validity of the settlement and that it was reasonable and in the minors' best interests.

[[ ]]*

Van Ryn [[ ]]* timely appeals.[5]

## CONTENTIONS

Van Ryn contends (1) under section 372, KAL lacked standing and the trial court lacked power to enforce the compromise, and (2) the trial court erred in finding the settlement was fair and adequate.

[[ ]]*

## DISCUSSION

As previously noted, liability is not at issue in this action, KAL's guilt having been established in the consolidated federal cases. (*In re KAL, supra,* 932 F.2d at pp. 1476-1477.) ▮▮▮ The issues in Van Ryn's appeal are discrete, namely whether under California law a guardian ad litem may repudiate a tentative settlement before trial court approval and whether a trial court may unilaterally enforce a repudiated settlement. Van Ryn contends, under section 372, the settlement is not final until the court approves it. KAL contends the "issue is whether a valid and enforceable agreement reached by two parties can be set aside for no justified reason." We hold, under section 372, a settlement of the claims of a minor by a guardian ad litem is not final or binding until the agreement is approved by the trial court

---

*See footnote, *ante*, page 1596.
[5]The parties agree the rulings of the trial court approving and enforcing the compromise were appealable because they dispose of all the issues relating to the minors' claims. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 821, fn. 3 [122 Cal.Rptr. 745, 537 P.2d 865].)

in which the claims were brought. Faced with a compromise which the guardian has repudiated in advance of such endorsement, a trial court has limited authority to enforce the settlement unilaterally, and may do so only after finding the guardian ad litem acted counter to the minor's best interests by rejecting the proposed compromise.

### 1. *Choice of Law*

■ Preliminarily, the parties dispute whether this action was brought under the Warsaw Convention for the Unification of Certain Rules Relating to International Transportation by Air (49 Stat. 3000, T.S. 876) and the supplemental Montreal Agreement, Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol.[6] (Together reprinted at 49 U.S.C.A., note following former § 1502.)

As a general rule, where an action founded on a federal statute is brought in a state court, the law of the state controls in matters of practice and procedure unless the federal statute provides otherwise. (*Bach* v. *County of Butte* (1983) 147 Cal.App.3d 554, 561-562 [195 Cal.Rptr. 268] [an action in state court under federal Civil Rights Act, 42 U.S.C. § 1983 et seq.].) Subdivision (2) of article 28 of chapter III of the Warsaw Convention specifies, "Questions of procedure shall be governed by the law of the court to which the case is submitted." (49 U.S.C.A., note following former § 1502.) Also, construction and enforcement of settlement agreements are generally governed by local law. (*Jeff D.* v. *Andrus* (9th Cir. 1989) 899 F.2d 753, 759.) Hence, even if this action had been brought under the treaties, there is no question but that California procedural law applies to settlement of the lawsuit. Indeed, KAL even concedes, citing section 372, "a settlement compromising a minor's claim must be judicially approved."

### 2. *Under section 372, the compromise of a minor's claim is not final or binding until it has been approved by the trial court.*

■ Section 372 describes the powers of the guardian ad litem. It provides in relevant part, the ". . . guardian ad litem so appearing for any minor, . . . shall have power, *with the approval of the court* in which the action or proceeding is pending, *to compromise the same,* to agree to the order or judgment to be entered therein . . . and to satisfy any judgment or order in favor of the ward or conservatee or release or discharge any claim of the ward or conservatee pursuant to such compromise. . . ." (Italics added.)

---

[6]These treaties limit damages from airplane crashes to a maximum of $75,000, except when, as here, there is a finding of "wilful misconduct." (*In re KAL, supra,* 807 F.Supp. at p. 1076, fn. 1.)

Research has revealed no California cases which deal specifically with the power of a guardian ad litem to repudiate a settlement before trial court approval, or the power of the trial court to enforce a compromise of a minor's claim despite a guardian's repudiation. However, the Ninth Circuit Court of Appeals' decision in *Dacanay* v. *Mendoza* (9th Cir. 1978) 573 F.2d 1075 is squarely on point. While *Dacanay* involved application of Guam law, the Guam Code of Civil Procedure section 372 is patterned after and closely follows the language of California's section 372 (573 F.2d at p. 1078),[7] and so it is persuasive authority.

In *Dacanay*, the minor's guardian ad litem agreed to compromise claims the minor had brought against the defendants as the result of a collision between the minor's bicycle and the defendant's automobile. The guardian moved ex parte for approval of the settlement agreement. Thereafter, additional evidence came to light reinforcing the defendants' culpability and indicating the minor's injuries would be permanent. Convinced the agreement was ill advised, the guardian ad litem moved to restore the action to the federal district court calendar. On the eve of trial, the defendants moved the district court for approval of the compromise. The district court ruled the agreement could not be repudiated and granted the motion to approve the compromise on the ground it was in the minor's best interest. (573 F.2d fat p. 1077.)[8]

The Ninth Circuit Court of Appeals reversed the district court's approval and, relying in part on California authority, interpreted Guam Code of Civil Procedure section 372 to hold "a guardian ad litem may repudiate a settlement agreement prior to court approval." (*Dacanay* v. *Mendoza, supra*, 573 F.2d at p. 1078.) The *Dacanay* court noted, while repudiation is not permitted by settling *adults*, section 372, which applies to the specific case of a compromise by a guardian ad litem of the claims of a minor, does permit repudiation of a settlement negotiated by the guardian for a minor.

[7]There are but minor differences in wording between the two statutes. Section 372 of the Guam Code of Civil Procedure provided, ". . . '[t]he general guardian or guardian ad litem so appearing for any infant . . . in any suit shall have power to compromise the same and to agree to the judgment to be entered therein for or against his ward, *subject to the approval of the court* in which such suit is pending.' " (*Dacanay* v. *Mendoza, supra*, 573 F.2d at p. 1078, original italics.) In California, the power of the guardian is *"with the approval of the court* in which such action or proceeding is pending." (Italics added.) In the context of this case, this is a wording difference without a distinction: in either case, the power of the guardian ad litem to compromise is *contingent* upon trial court approval.

[8]KAL's arguments to the contrary, *Dacanay* mirrors the facts presented here. In a futile attempt to distinguish *Dacanay*, KAL insists that the court here merely enforced a settlement agreement because it was in the best interests of the minor. However, that is exactly what the federal District Court for the District of Guam did in *Dacanay*. (*Dacanay* v. *Mendoza, supra*, 573 F.2d at p. 1077.)

The *Dacanay* court's interpretation of section 372 was compelled by the historical role the guardian plays as an officer of the court, coupled with the principle that minors lack contractual capacity. As early as the courts of chancery, a guardian ad litem lacked the power to bind a minor litigant to a settlement agreement *absent* an independent investigation by the court. "[E]very step in the proceeding [of a minor's lawsuit] occurs under the aegis of the court." (*Dacanay* v. *Mendoza, supra,* 573 F.2d at p. 1079.) Accordingly, the guardian may negotiate a proposed compromise, but the agreement must be referred to the court because the duties of the guardian ad litem are "essentially ministerial." (*Ibid.*) Thus, "[i]t is the court's order approving the settlement that vests the guardian ad litem with the legal power to enforce the agreement. [Citation.]" (*Ibid.*)

Additionally, just as a minor lacks capacity to enter into a contract, the guardian ad litem lacks contractual capacity to settle litigation without endorsement of the court. As with any other contract where one party lacks capacity, or a necessary contractual formality has been ignored, the contract is voidable until the defect is remedied. (*Dacanay* v. *Mendoza, supra,* 573 F.2d at p. 1080.)

Hence, as the *Dacanay* court inevitably concluded, ". . . since the enforceability of a contract in settlement of litigation involving a minor party depends upon the approval of a court, we hold that such a contract is voidable at the election of the minor through his guardian ad litem unless and until the court's imprimatur has been placed on it." (573 F.2d at p. 1080.)[9]

We are persuaded by the reasoning of the Ninth Circuit's decision and readily apply its holding. █ The guardian ad litem serves merely as the representative of the minor and an officer of the court. (*In re Christina B.* (1993) 19 Cal.App.4th 1441, 1453 [23 Cal.Rptr.2d 918].) As an agent with limited powers, the guardian's purpose is to protect the rights of the minor (*ibid.*); but it is the duty of the court to see that such rights are protected. (*Berry* v. *Chaplin* (1946) 74 Cal.App.2d 652, 657 [169 P.2d 442].) A guardian has no authority to enter into an agreement compromising the claims of his charge without the sanction of the court that appointed the guardian. (*Ibid.*; *Leonard* v. *Rose* (1967) 65 Cal.2d 589, 594 [55 Cal.Rptr. 916, 422 P.2d 604]; *Everett* v. *Everett* (1976) 57 Cal.App.3d 65, 69 [129

---

[9]In fact, the *Dacanay* court noted, while it is always the prerogative of the legislature to grant the guardian ad litem with personal authority to bind the minor to a settlement, neither the Guam nor the *California* Legislature has done so. (*Dacanay* v. *Mendoza, supra,* 573 F.2d at p. 1080, fn. 9.)

Cal.Rptr. 8].) The court's order approving the compromise confers on the guardian ad litem the legal power to enforce that agreement. (*Dacanay* v. *Mendoza, supra*, 573 F.2d at p. 1079.) This is so because the court effectively exercises "supervision over the rights of the minor or the acts of the guardian ad litem." (*Berry* v. *Chaplain, supra*, at p. 658.) Therefore, without trial court approval of the proposed compromise of the ward's claim, the settlement cannot be valid. (*Anderson* v. *Latimer* (1985) 166 Cal.App.3d 667, 676 [212 Cal.Rptr. 544].)

Nor is the settlement binding until it is endorsed by the trial court. Subject to exceptions not applicable here, contracts are voidable by minors in California. (Fam. Code, §§ 6710, 6701; 1 Witkin, Summary of Cal. Law (9th ed., 1994 pocket supp.) Contracts, § 356C, pp. 71-72.) Therefore, a proposed compromise is always voidable at the election of the minor through his guardian ad litem unless and until "the court's imprimatur has been placed on it." (*Dacanay* v. *Mendoza, supra*, 573 F.2d at p. 1080.) ▮ We hold, as guardian ad litem, Van Ryn was permitted to reject the compromise and withdraw her petitions before trial court approval. (*Ibid.*)

In opposing Van Ryn's appeal, KAL relies on general principles of contract law in support of its "counterstatement of the case," that the issue here "involves the enforceability of a settlement agreement reached in good faith by plaintiff-appellant . . . and defendant . . . which plaintiff subsequently sought to repudiate."

But for the fact this case concerns the claims of minors, there would be no doubt repudiation would be impossible and KAL could unilaterally enforce the settlement contract. (*Dacanay* v. *Mendoza, supra*, 573 F.2d at p. 1078; § 664.6.) However, general precepts of the enforceability of contracts are inapplicable to cases concerning the compromise of the claims of *minors*. (Cf. *Berry* v. *Chaplin, supra*, 74 Cal.App.2d at p. 657 [the relationship between guardian ad litem and minor is not the same as that between an attorney and an adult client].) The Legislature has spoken on that subject in the form of section 372 which specifies the power of the guardian to compromise claims on behalf of minors.

3. *The trial court has only limited authority to enforce unilaterally a repudiated compromise.*

▮ Van Ryn contends the trial court has no authority to enforce the compromise, only she does. KAL argues the trial court has the power to direct a settlement unilaterally, "provided that the court 'conducts its own inquiry to determine whether the settlement serves the best interests of the minor.' "

Section 372 does not provide authority for *KAL* to bring its "motion" to enforce the compromise. That provision delineates the powers of the *guardian*, not those of parties opposing the minor. The rules of the Superior Court of Los Angeles County provide only for the guardian ad litem's petition for approval of the compromise of the ward's claims. (Super. Ct. L.A. County, Probate Policy Manual, rule 21:1.00 et seq.) There was no procedural authority for KAL's motion.

Nor may KAL or the trial court enforce the settlement under section 664.6, concerning the court's entry of judgment on a stipulated settlement. It is a maxim of statutory construction that a specific provision will control over a general statute. (§ 1859; *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687].) While section 664.6 generally deals with the court's power to enforce a settlement, section 372 is a special statute dealing with the power of guardians to compromise on behalf of minors. As such, the provisions of section 372 will control in litigation, as here, in which one of the parties is a minor. Additionally, at the time of the court's approval of the compromise here, section 664.6 provided, "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement." (§ 664.6.) The record here does not contain a settlement agreement "signed by the parties outside the presence of the court" (§ 664.6), and there was no oral stipulation before the court because Van Ryn's attorney rejected the agreement and withdrew the petitions. (§ 664.6.) Hence, on the record before us, the requirements of section 664.6 were never satisfied.

In addressing this issue, the *Dacanay* court distinguished between the standard of review when the trial court approves a settlement continuously consented to by both parties, as opposed to when the court is called upon to examine the guardian's repudiation of a settlement. (*Dacanay* v. *Mendoza, supra,* 573 F.2d at p. 1080.) Only when the court *accepts* a settlement *endorsed by the guardian* does it conduct its own inquiry to determine whether the settlement serves the minor's best interests.[10] (*Ibid.*)

By contrast, when the guardian *repudiates* the settlement, the *Dacanay* court explained, ". . . the decision of the guardian deserves some deference. Consequently, . . . the court has limited power to direct a settlement unilaterally, *but to do so, the court must first find that the guardian ad litem has acted arbitrarily and capriciously in the sense that his conduct is inimical to*

---

[10]Hence, KAL quotes *Dacanay* out of context in pursuit of this contention.

*the best interests of the court's ward.*" (573 F.2d at p. 1080, italics added.) Consequently, the *Dacanay* court held, "[a] court . . . may not summarily enforce a tentative settlement agreement when a minor is a party to the litigation. This is because the actual merits of the controversy remain of consequence as the court must base its approval upon the fact that the terms of the settlement are completely fair to the minor." (*Dacanay* v. *Mendoza, supra,* 573 F.2d at p. 1078.)

 We therefore reject KAL's analysis which vests more power in the court to enforce a settlement than in the guardian who has disavowed it simply because such agreement is seen to be in the best interests of the minor. Rather, we hold the trial court here could not unilaterally and summarily enforce the repudiated compromise without first determining whether, in rejecting the agreement, Van Ryn had acted contrary to the best interests of the minors.[11]

 To summarize our holding, under section 372, Van Ryn had no power, without authorization of the trial court, to bind the minors to a compromise of their claims. The settlement originally negotiated was neither final nor binding until trial court approval. Hence, that compromise could be repudiated by Van Ryn at any time until such approval was rendered. Van Ryn did emphatically repudiate the compromise in advance of the hearing on her petitions. No statutory authorization existed for KAL to move to enforce the compromise. Faced with a rejected compromise, the trial court was required to grant the guardian some deference and could unilaterally enforce the settlement only upon a finding Van Ryn's repudiation was adverse to the best interests of the minors. Because the trial court failed to make such a finding, the judgment must be reversed.

As a result of our holding here, we need not reach Van Ryn's corollary argument the trial court erred in finding the settlement was fair and adequate.

---

[11]KAL's claim to the contrary, this appeal concerns the settlement pursuant to section 372 between KAL and Van Ryn solely in her capacity as guardian ad litem for the minors. The personal injury claim brought by Van Ryn as executor of the estate of Rebecca Scruton is not implicated in our holding here. In other words, we do not address the personal injury claim. We reviewed KAL's citations in support of their contention "KAL agreed to settle all claims for damages as a result of the death of decedent REBECCA SCRUTON for $500,000." The references do not support this contention.

[[4. *The trial court properly denied the Beals leave to file their complaint in intervention.*]]*

## DISPOSITION

The judgment is reversed. Costs on appeal awarded to Appellant Van Ryn.

Klein, P. J., and Croskey, J., concurred.

*See footnote, *ante,* page 1596.