Filed 10/7/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| MARIA CARACHURE, | |
| Plaintiff and Appellant, | E074226 |
| v. | (Super.Ct.No. RIC1309555) |
| CELIA ACOSTA SCOTT, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Irma Poole Asbury and John W. Vineyard, Judges.[1] Affirmed.

Avrek Law Firm, Maryam Parman; Bisnar | Chase, Brian D. Chase and H. Gavin Long for Plaintiff and Appellant.

---

[1] Judge Vineyard struck the punitive damages allegations and prayer; Judge Asbury granted partial nonsuit and approved the settlement.

Demler, Armstrong & Rowland, James P. Lemieux, David A. Ring; Greines, Martin, Stein & Richland, Robert A. Olson, David E. Hackett and Gary J. Wax for Defendant and Respondent.

Plaintiff and appellant Maria Carachure suffered serious injuries when she was struck by a vehicle driven by defendant Celia Acosta Scott.  Plaintiff initiated this action, and a jury found the action was barred because of a "'binding and enforceable settlement.'"  On appeal, plaintiff contends the trial court (Hon. Irma Poole Asberry) erred in granting partial nonsuit on the issue of plaintiff's consent to settle and acted in excess of its power by approving the settlement on her behalf.  She further contends the trial court (Hon. John W. Vineyard) erred in striking the allegations and prayer for punitive damages.  We reject plaintiff's contentions and affirm.

## I.  PROCEDURAL BACKGROUND AND FACTS

### A.  *The Accident.*

On August 21, 2011, plaintiff sustained injuries to her brain, body, and nervous system when defendant's car struck her while she was standing on the side of a road in Riverside.  Three of plaintiff's family members, Gabriel Fuentes, Jr. (her son), Matthew Barrera (her grandson), and Mary Jane Fuentes (her granddaughter) witnessed the accident.  At the time of the accident, defendant carried automobile insurance with Safeco Insurance Company of America (Safeco), and the policy provided coverage limits for bodily injury claims of $15,000 for each person and a maximum of $30,000 for each occurrence.

2

*B. The Settlement.*

On October 12, 2011, Maryam Parman of the Avrek Law Firm (Avrek firm) informed senior claims specialist Ken Wong of Safeco that plaintiff and family members retained the Avrek firm to "represent their legal rights and interests." On October 14, 2011, Ms. Parman[2] sent Mr. Wong another letter "demanding settlement in the amount of [defendant's] policy limits, $15,000" for plaintiff. She further stated: "As you know this traumatic incident was witnessed by [plaintiff's family members], causing them mental anguish and emotion[al] distress. As a result, we are requesting settlement demand in the amount of your insured's policy limits; $15,000." The offer was conditioned upon Safeco providing a "copy of the complete insurance policy of [defendant] . . . , including declarations"; written confirmation of the policy limit and "your acceptance" of the demand by October 24, 2011, at 5:00 p.m.; a "prompt exchange of the settlement draft for the release of all claims"; and defendant's declaration disclaiming any "additional insurance coverage and agency." The letter also threatened Safeco with insurance bad faith liability for failing to accept the demand.

On October 21, 2011, at 3:07 p.m., Mr. Wong e-mailed Esli Frias, the paralegal at the Avrek firm who was assigned to the file, to confirm their conversation wherein they "agreed to settle [plaintiff's] bodily injury claim for [defendant's] policy limit of $15,000.00." Mr. Wong attached a copy of the complete insurance policy, as requested;

---

[2] The letter contains the name Mitra Parman; however, Maryam Parman testified that Mitra's name and signature on the letter was a mistake, which was caused, "most likely," when the firm's paralegal "printed a letter that previously had Mitra's name on it and had not changed it to [Maryam's] name."

3

asked the Avrek firm to provide a "no other insurance and not in course of employment agency" declaration for defendant to execute; and requested a 30-day extension of time to respond to the policy limit demand for the family members because the police incident report did not list them as witnesses to the accident or being at the scene of the accident. At 3:15 p.m. on the same day, Ms. Frias provided the policy declaration for defendant to sign and asked Mr. Wong to "forward the settlement draft along with the Release of All Claims as soon as possible." Three days later, on October 24, 2011, Mr. Wong e-mailed Ms. Frias attaching a confirming letter, the release, an insured signed declaration, and a Medicare mandate letter. Mr. Wong also sent a letter to Ms. Parman confirming that they had settled plaintiff's claim for the policy limit of $15,000.00. He stated: "Upon receipt of the signed Release, along with your taxpayer identification number and instruction of how you want the settlement check to be made payable to, [he] will have the settlement check issued accordingly."

Over the next several months, Mr. Wong exchanged multiple letters and e-mails with the Avrek firm regarding the settlement of plaintiff's claim; no one denied that a settlement had been reached. In June 2012, the Avrek firm represented that plaintiff had agreed to sign the release. From October 2011 through July 2012, plaintiff's husband was responsible for deciding legal issues for plaintiff. After July 2012, plaintiff's daughter-in-law and caretaker, Maria Jo Estrada-Fuentes, was responsible for making legal decisions for plaintiff.

On September 18, 2012, Ms. Parman sent a new demand letter to Mr. Wong. She demanded "settlement for [defendant's] policy limit of $30,000 ($15,000 for [plaintiff]

4

and $15,000 to be disbursed between the remaining three claimants)." This settlement demand was conditioned upon Safeco's furnishing a "certified copy" of the complete insurance policy, including declarations; a "prompt exchange of the settlement draft" for a "Release of All Claims"; a settlement draft naming the firm and its clients as payees only; and a declaration regarding additional insurance and agency. Ms. Parman stated the Avrek firm will provide "the appropriate MediCare Compliance documents and hold harmless for any and all non-statutory liens." The offer remained open until "5:00 p.m. on September 27, 2012." In response, Mr. Wong informed Ms. Parman that a $15,000 settlement of plaintiff's claims had already been reached, and Safeco was waiting on the signed release and the taxpayer identification number in order to issue the settlement check. Regarding the family members, Mr. Wong requested evidence to support the claim that plaintiff's grandchildren had actually witnessed the accident and medical documentation to support plaintiff's son's mental anguish and emotional distress claims.

On November 5, 2012, the Avrek firm asserted that its policy limit demand expired on September 27, 2012, and Safeco's failure to "unconditionally and timely tender the policy" evidenced bad faith. The Avrek firm claimed there had been no prior settlement of plaintiff's claims because the previously negotiated and agreed-upon release was "not acceptable" and "not bargained for." In his November 13, 2012, reply letter, Mr. Wong provided a chronology of the correspondence between himself and the Avrek firm. Based on this correspondence, he stated the Avrek firm "accepted the settlement for [plaintiff] unconditionally" and lead Safeco to believe the claims of the family members "were withdrawn."

5

*C. The Lawsuit.*

On August 15, 2013, plaintiff[3] initiated this action against defendant. She was represented by Carpenter, Zuckerman & Rowley. By way of her first amended complaint (FAC) filed on June 16, 2014, plaintiff alleged negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. On August 18, 2014, the superior court (Judge Vineyard) granted defendant's motion to strike, without leave to amend, striking the punitive damages allegations and prayer. Answering the FAC, defendant alleged "a binding and enforceable settlement which constitutes a bar to further prosecution of the instant action."

On August 23, 2013, Maria Jo Estrada-Fuentes was appointed guardian ad litem for plaintiff.

*D. Motion for Summary Judgment.*

In March 2015, defendant moved for summary judgment on the grounds plaintiff, "through her counsel of record, entered into a valid and enforceable settlement with defendant, by which she agreed to release and compromise her claim for the policy limits of defendant's applicable insurance." Plaintiff opposed the motion, asserting she "never accepted the terms of [the] settlement proposed." On April 9, 2015, the superior court granted the motion, finding that the existence of a settlement agreement provided a complete defense to the action, and entered judgment in favor of defendant.

---

[3] The family members also sued defendant; however, because they settled their claims and are not parties to this appeal, any reference to them will be on an as-needed basis.

6

Plaintiff appealed and this court reversed, concluding there was a triable issue of fact as to whether plaintiff actually assented to the settlement. On April 25, 2017, defendant successfully moved to summarily adjudicate plaintiff's claim for intentional infliction of emotional distress on the ground that she "cannot establish one or more elements of this cause of action, particularly outrageous conduct intended to cause any plaintiff emotional distress, or conduct enacted with reckless disregard of the probability that any plaintiff would suffer emotional distress, knowing that any plaintiff was present when the conduct occurred."

*E. The Trial.*

On May 2, 2018, during a pretrial hearing, the parties stipulated to bifurcate "the trial of the defense of settlement and the trial on the personal injury claims" and to try the defense of settlement first. Plaintiff's counsel stated there was no longer any factual dispute as to whether plaintiff's representatives had authorized the Avrek firm's offer on her behalf: "And the testimony is going to be we authorized a settlement demand, not the settlement. That's the whole issue here. There is no dispute that we authorized Avrek to make a settlement demand." During the discussion regarding jury instructions, specifically the language in one instruction which provided "'consent to settle,'" plaintiff's counsel reiterated: "Nobody's ever going to dispute that we authorized an offer."

On August 13, 2018, trial began with pretrial motions, stipulations, jury instructions, and a special verdict form. Defendant stipulated that she was liable for the accident and plaintiff's damages; however, she reserved the affirmative defense of

7

settlement.  Defendant also stipulated that plaintiff did not have the legal capacity to personally authorize the settlement of her claim.  On August 16, 2018, the parties further stipulated that plaintiff has been incapable of legally entering into a contract since August 20, 2011.

### 1.  *Partial nonsuit.*

After the jury was selected, the trial court (Judge Asberry) announced that defendant would proceed first, given her burden of proof on the affirmative defense of a binding and enforceable settlement.  Defense counsel opened by stating the jury would hear evidence that plaintiff's husband authorized the settlement offer, and plaintiff's guardian ad litem, appointed by the court, later ratified the October 2011 offer.

Plaintiff's counsel, in his opening statement, agreed that plaintiff's legal representatives authorized the Avrek firm to make a settlement offer on plaintiff's behalf.  However, he stated there is a difference between an offer and demand, on the one hand, and a settlement, on the other.  He explained that "[n]o one had the legal right to *settle* for her on October 24th, 2011."  (Italics added.)

At the close of the opening statements, defense counsel moved for partial nonsuit on the issue of whether the Avrek firm had "the consent of the client to make an offer to settle."  (See *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 404 ["The authority . . . conferred upon an attorney is in part apparent authority . . . to do that which attorneys are normally authorized to do in the course of litigation . . . and in part actual authority" either express or implied].)  Following briefing and argument, the trial court ruled that partial nonsuit on the issue was proper because plaintiff's counsel had the "authority of

her client to make the settlement offer [i]n the letter dated 10-14-11." The court instructed the jury as follows: "It is an established fact for this proceeding that plaintiff's counsel had client authority to make the offer specified in the letter dated October 14, 2011."

### 2. *The jury's verdict.*

On August 30, 2018, the jury reached a unanimous verdict in favor of defendant. According to the special verdict, the jury found that Safeco accepted plaintiff's October 2011 settlement offer by complying with all of its conditions.

### 3. *The trial court's approval of the settlement.*

On October 26, 2018, almost two months after the jury returned its verdict, defendant moved for the trial court to enter judgment and approve the settlement (Code Civ. Proc., § 372) because plaintiff's counsel refused to file the required petition. Defendant requested the court "either approve the settlement based on this motion, do so on its own motion, or issue an order to show cause against plaintiffs' counsel as to why the settlement should not be approved as being in the best interests of the incompetent." On November 29, 2018, the court granted the motion over plaintiff's opposition. The court ruled: "The settlement is approved and defendant shall submit a judgment reflecting the jury verdict and this court's present ruling. The court finds it has the inherent power and the authority to unilaterally consider the approval of the settlement between plaintiff . . . and defendant." The court found "the failure of plaintiff to bring the present motion, whether due to a litigation strategy or otherwise is adverse to the best

9

interests of [plaintiff]" because the insurance settlement funds are the only funds available to her.

### 4. *Judgment and new trial motion.*

Judgment was entered on June 14, 2019. On August 2, 2019, plaintiff unsuccessfully moved for a new trial on the grounds the trial court erred in granting nonsuit on one element of an affirmative defense and in approving the compromise of an incompetent adult's settlement.

## II. DISCUSSION

### A. *The Trial Court Properly Granted Partial Nonsuit.*

Plaintiff argues the trial court erred in granting partial nonsuit for defendant. Specifically, she contends: (1) defendant lacked standing to move for nonsuit because she bore the burden of proving her affirmative defense; (2) partial nonsuit as to one element of an affirmative defense is not proper; and (3) the ruling that "plaintiff's counsel had authorization of her client to make the settlement offer set forth in the letter of October 14th, 2011" is based on the court's misinterpretation of plaintiff's opening statement. As we explain, we reject these contentions.

### 1. *Standard of review.*

Partial nonsuits are authorized by Code of Civil Procedure[4] section 581c, subdivision (b), which provides: "If it appears that the evidence presented, or to be presented, supports the granting of the motion as to some but not all of the issues

_____

[4] Further statutory references are to the Code of Civil Procedure.

10

involved in the action, the court shall grant the motion as to those issues and the action shall proceed as to the issues remaining."

"'The standard of review for a nonsuit after [the] conclusion of the opening statement is well settled. Both the trial court in its initial decision and the appellate court on review of that decision must accept all facts asserted in the opening statement as true and must indulge every legitimate inference which may be drawn from those facts. [Citations.] A nonsuit at this early stage of the proceedings is disfavored. [Citation.] It can only be upheld on appeal if, after accepting all the asserted facts as true and indulging every legitimate inference in favor of plaintiff, it can be said those facts and inferences lead inexorably to the conclusion plaintiff cannot establish an essential element of its cause of action or has inadvertently established [i]ncontrovertible proof of an affirmative defense.'" (*Galanek v. Wismar* (1999) 68 Cal.App.4th 1417, 1424.) We review a nonsuit de novo. (*Thrifty Payless*, *Inc. v. Mariners Mile Gateway*, *LLC* (2010) 185 Cal.App.4th 1050, 1060.)

### 2. *Additional background information.*

In phase one of the bifurcated trial, the jury was tasked with deciding the merits of the affirmative defense of settlement. Because it was defendant's burden to prove this defense, the trial court ordered defense counsel to present an opening statement, evidence, and closing argument first.

Defense counsel opened with an overview of the shifting positions taken by plaintiff concerning whether a settlement had been reached. Acknowledging plaintiff's lack of capacity to enter into a contract, counsel discussed the two ways "that consent in

11

this circumstance can exist, that authorization to make that first demand in October 2011 could exist." Specifically, he stated the jury would hear that "a spouse in California has the ability on behalf of [his or her] other incapacitated spouse to make a settlement offer, to handle their affairs, without formal court approval. [¶] [And] . . . [i]f an original offer was truly unauthorized, somebody can ratify it years later and say, no, I agree that that should be deemed authorized." Defense counsel asserted the evidence would show that plaintiff's husband approved the settlement offer contained in a letter dated October 14, 2011, and the offer was also ratified by plaintiff's guardian ad litem at a later date.

In response, plaintiff's counsel conceded that there were two people who could settle plaintiff's claims, her husband and the court-appointed guardian ad litem, and that these people authorized a settlement offer. Counsel stated plaintiff's husband had provided "consent for an offer or a demand." Following a lunch break, counsel said he wanted to "make sure" the jury "understood the difference here between the offer and demand versus settlement." Counsel stated: "We agree a hundred percent. My clients, we authorized a demand. We didn't know what legal things the lawyers would put in but that's beside the point. We authorized, whatever the lawyers put in there was fine. That's different from consent to go settle the case. . . . I want everybody to understand we agree the offer was made, it was consent to the demand but under no circumstances would they ever consent or agree to any settlement whatsoever." Plaintiff's counsel reiterated this point: "I'm going to get you what you need to show that [defendant] can't prove this case settled. . . . Remember there's no acceptance, remember nobody had the

12

ability to settle it for her legally on October 24th, 2011. . . . No one had the legal right to settle for her on October 24th, 2011."

Following the opening statements, defendant moved for, and the trial court granted partial nonsuit, ruling "plaintiff's counsel had authorization of her client to make the settlement offer set forth in the letter of October 14th, 2011."

### 3. Analysis

#### a. Defendant properly moved for partial nonsuit.

Citing *Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 207, plaintiff argues "the allowable moving party as to nonsuit of the affirmative defense is a plaintiff, since the defendant carries the burden of proof." Admitting that *Brassinga* does not discuss "the procedural issue which faces us in this case," plaintiff asserts that decision "is instructive in demonstrating who has standing to make which motion: the plaintiffs could move for nonsuit on the affirmative defense, while the defendant had to move for directed verdict on that issue." Plaintiff therefore contends defendant lacked "standing" to move for nonsuit because she bore the burden of proving her affirmative defense. As we explain, plaintiff's contention is misplaced.

"Black's Law Dictionary defines standing as a 'party's right to make a legal claim or seek judicial enforcement. . . . Also termed *standing to sue*.' [Citation.] 'A litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on the merits. [Citation.] . . . Standing "'goes to the existence of a cause of action.'" [Citation.]" [Citation.] [¶] . . . [¶] "Standing requirements will vary from statute to statute based upon the intent of the Legislature and the purpose for which the particular

13

statute was enacted."'"  (*Librers v. Black* (2005) 129 Cal.App.4th 114, 124.)  Standing is not an issue in this case.

Nonetheless, plaintiff argues that, because the defense bears the burden of proof on affirmative defenses, defendant may not seek nonsuit on these defenses even when the facts are admitted.  Not so.  Section 581c, in relevant part, provides that "(a) [o]nly after, and not before, the plaintiff has completed his or her opening statement, . . . the defendant, . . . may move for a judgment of nonsuit.  [¶]  (b)  If it appears that the evidence . . . to be presented, supports the granting of the motion as to some but not all of the issues involved in the action, the court shall grant the motion as to those issues . . . ."  (§ 581c, subds. (a), (b).)  A trial court may grant a nonsuit after the opening statements, when plaintiff's counsel discloses facts constituting an affirmative defense that bars plaintiff's claims.  (*Russell v. Soldinger* (1976) 59 Cal.App.3d 633, 645-646 (*Russell*) [affirming nonsuit on opening statement based on doctrine of unclean hands]; *Abeyta v. Superior Court* (1993) 17 Cal.App.4th 1037, 1041 [Nonsuit at this early stage may "only be upheld on appeal if, after accepting all the asserted facts as true and indulging every legitimate inference in favor of plaintiff, it can be said those facts and inferences lead inexorably to the conclusion plaintiff cannot establish an essential element of its cause of action or has inadvertently established incontrovertible proof of an affirmative defense."].)

Nothing in the statutory language, or case law interpreting the statute, constrains the ability of a defendant to move for nonsuit when a plaintiff concedes facts that constitute an affirmative defense.  In *Russell v. Soldinger*, *supra*, 59 Cal.App.3d at

14

page 636, the plaintiff sued for breach of an oral agreement "to refrain from competitive bidding for the property at a probate sale and for defendants, as highest bidders, to take title jointly with plaintiffs on a 50-50 basis." During the opening statement, plaintiff's counsel admitted there was an oral agreement between the parties, and plaintiff refrained from bidding based on the agreement. (*Id*. at pp. 636-637.) Following the opening statement, the trial court granted nonsuit on the affirmative defense of illegality, finding the "agreement forming the basis for this litigation was unenforceable as being contrary to public policy and illegal." (*Id*. at p. 641.) The Court of Appeal affirmed, concluding the opening statement revealed that "two experienced real estate operators" entered into an illegal agreement to limit the bidding at a probate sale for the purchase of estate property in "an effort to make an advantageous purchase at the expense of the estate." (*Ibid*.; accord, *Rokos v. Peck* (1986) 182 Cal.App.3d 604, 611 [trial court properly granted nonsuit on ground plaintiff had "'no standing to sue for breach of contract'" after plaintiff's counsel conceded, in opening statement, that there was no assignment of claimed contractual rights].)

Notwithstanding, *ante*, plaintiff takes issue with how defendant labeled her motion. Plaintiff contends defendant had to move for directed verdict on the issue, not nonsuit. This contention misses the mark. The title given to the relief requested is not determinative. "A rose by any other name would smell as sweet." (Shakespeare, Romeo and Juliet, act II, scene 2.) "A motion for a directed verdict, like its close cousins the motion for nonsuit and motion for judgment notwithstanding the verdict, may be granted when 'the court . . . determines there is no evidence of sufficient substantiality to support

15

the claim or defense of the party opposing the motion, or a verdict in favor of that party.' [Citation.]  'The function of these motions is to prevent the moving defendant from the necessity of undergoing any further exposure to legal liability when there is insufficient evidence for an adverse verdict.'"  (*O'Shea v. Lindenberg* (2021) 64 Cal.App.5th 228, 235.)  Such is the case before this court.

Even assuming defendant's motion was mislabeled, this procedural irregularity does not require reversal of the judgment if the motion was otherwise well taken. (*Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 760, fn. 4 ["[I]t is 'irregular' to grant a motion for nonsuit before a plaintiff's opening statement.  [Citation.] It is nevertheless not reversible error to grant such a motion prematurely if the motion is otherwise well taken."]; see § 475 ["The court must, in every stage of an action, disregard any error . . . in the pleadings . . . which, in the opinion of said court, does not affect the substantial rights of the parties.  No judgment, decision, or decree shall be reversed or affected by reason of any error . . . unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error . . . the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed.  There shall be no presumption that error is prejudicial, or that injury was done if error is shown."].) Based on the jury's unanimous conclusion that a valid settlement had been reached between the parties (a conclusion not challenged on appeal), this action was barred by the binding settlement agreement.  Defendant's motion, therefore, was well taken.

b. Partial nonsuit as to one element of an affirmative defense is proper.

Next, plaintiff contends partial nonsuit as to one element of an affirmative defense is not proper because it is not included in the Rutter Group's list of examples of situations where partial nonsuit may be granted. We are not persuaded.

"[P]rior to 1980 it had been judicially held that trial courts could not grant partial nonsuits. [Citations.] It was reasoned that granting partial nonsuits could result in multiple appealable judgments in violation of the one final judgment rule. [Citation.] In 1980 section 581c was amended to permit courts to grant partial nonsuits. [Citation.] The Legislature resolved the multiple-judgment difficulty by providing that despite the granting of the motion for nonsuit a final judgment should not be entered until termination of the action." (*Beavers v. Allstate Ins. Co.* (1990) 225 Cal.App.3d 310, 324-325.) Thus, section 581c, subdivision (b), in relevant part, provides: "If it appears that the evidence . . . to be presented, supports the granting of the motion as to some but not all of the *issues involved in the action*, the court shall grant the motion as to *those issues . . . .*" (Italics added.)

As defendant points out, section 581c, subdivision (b), uses the term *issues*, not *causes of action* or *affirmative defenses*.[5] (Cf. § 437c, subd. (f)(1) [summary

---

[5] We have reviewed defendant's request for judicial notice filed January 22, 2021. The request that we take judicial notice of the legislative history of Senate Bill No. 1531 (1979-1980 Reg. Sess.), the act that amended section 581c, is denied because the materials are unnecessary to the resolution of this issue. (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 174 [request for judicial notice of legislative history denied because language of statute was plain and consideration of legislative history was therefore unnecessary].)

adjudication limited to causes of action, affirmative defenses, issues of duty, or claims for damages].)  To that end, courts have granted partial nonsuit on issues that comprise less than an entire cause of action.  (*Hock v. Allied-Signal*, *Inc*. (1994) 24 Cal.App.4th 48, 60-61; see *id*. at pp. 59-62 [partial nonsuit "on the issue of punitive damages is proper when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression"]; *Bromme v. Pavitt* (1992) 5 Cal.App.4th 1487, 1506-1507 [partial nonsuit, which precluded the jury from considering alleged negligent acts by defendant after June 1981, was proper since Calif. does not recognize a wrongful death cause of action arising from medical malpractice when the decedent has less than 50% chance of survival].)  Here, the trial court did the same.  By its broad terms, section 581c, subdivision (b), authorized the trial court's action.

c.  The trial court did not misinterpret plaintiff's opening statement.

Finally, plaintiff contends the ruling that "plaintiff's counsel had authorization of her client to make the settlement offer set forth in the letter of October 14th, 2011," is based on the trial court's misinterpretation of her opening statement.  According to plaintiff, "at no time did the [Opening] Statement include a word that anyone was acting with [her] legal authority as her agent."  She asserts the trial court "treated the words 'My clients' as referring to [her], herself, and not the family members whom counsel had been referring to as his clients."  She adds that the court also "added content to the statement, apparently that the word 'authorized' included an admission that a family member had legal authority to act on [her] behalf.  This was also in error."  We have reviewed plaintiff's opening statement and conclude there was no misinterpretation.

18

Plaintiff's counsel did not dispute that "there was consent for an offer or a demand" in October 2011. Rather, he agreed "a hundred percent. *My clients*, we authorized a demand."[6] (Italics added.) Contrary to plaintiff's assertion, these words are not ambiguous. According to the FAC, plaintiff and her family members sued defendant based on the car accident that caused severe injuries to plaintiff. Defendant's answer asserted that "plaintiffs' counsel made a legally binding offer to settle the claims of one or more plaintiffs and said offer was accepted on behalf of the defendant, resulting in a binding and enforceable settlement which constitutes a bar to further prosecution of the instant action." Before proceeding with plaintiff's personal injury claim, the jury was tasked with deciding whether there was a binding settlement between plaintiff and defendant.

During the opening statement, plaintiff's counsel acknowledged that plaintiff was married, and that the court appointed a guardian ad litem to represent her best interests. He then stated his "clients" authorized the settlement offer. The term "authorize" means to "enable[] a person to act; it gives the authority for a person to carry out an act." (The Law Dictionary <https://thelawdictionary.org/authorize/> [as of Oct. 7, 2021]; see

---

[6] Counsel stated: "So who can settle? Legally married, they've got to prove they were married. And the court-appointed guardian, and that was Maria Fuentes. So that's who can settle here. And for a settlement, you have to have an offer, which we believe we did. [¶] . . . [¶] And was there consent? Did the husband consent to the offer? Make an offer, the demand, no dispute. Unqualified acceptance, you'll see there was none. . . . And they gave them a second chance to fix it, and they didn't, we'll get to that later." Later, plaintiff's counsel stated: "I want everybody to understand we agree the offer was made, it was consent to the demand, but under no circumstances would they ever consent or agree to any settlement whatsoever."

*County of Washington v. Gunther* (1981) 452 U.S. 161, 169 ["Although the word 'authorize' sometimes means simply 'to permit,' it ordinarily denotes affirmative enabling action"].) The term "clients" included plaintiff's husband and guardian ad litem because they were the people who could legally authorize the settlement offer. Given counsel's use of the terms "clients" and "authorized," his statements were properly interpreted to mean that plaintiff, via her husband or her guardian ad litem, consented to the October 2011 settlement demand. Consequently, we conclude the trial court did not misinterpret plaintiff's opening statement when it granted partial nonsuit "establishing that plaintiff's counsel had authorization of her client to make the settlement offer set forth in the letter of October 14th, 2011."

### B. The Trial Court Properly Approved the Settlement of Plaintiff's Claims.

After the jury unanimously found a valid settlement, plaintiff's counsel refused to file the paperwork necessary for the entry of judgment and approval of the settlement because he feared it would act as a waiver of plaintiff's rights to challenge the jury's findings on appeal. In response, defendant moved to enter judgment and approve the settlement. (§ 372.) The trial court granted the motion. On appeal, plaintiff asserts the court's approval of the settlement was an act in excess of its jurisdiction and, therefore, is a voidable order. Counsel contends that "what happens when litigation is over is the time to decide whether a resolution is in [plaintiff's] benefit, not during the process of her lawsuit." We disagree.

"'[A] guardian ad litem's role is more than an attorney's but less than a party's. The guardian may make tactical and even fundamental decisions affecting the litigation

but always with the interest of the guardian's charge in mind.  Specifically, the guardian may not compromise fundamental rights . . . without some countervailing and significant benefit.'  [Citation.]  Thus, '[s]hould a guardian ad litem take an action inimical to the legitimate interests of the ward, the court retains the supervisory authority to rescind or modify the action taken.'"  (*Zapanta v. Universal Care*, *Inc.* (2003) 107 Cal.App.4th 1167, 1175.)  Section 372 empowers a guardian ad litem to settle the incapacitated party's claim; however, the settlement is not final or binding until the agreement is approved by the trial court in which the claim was brought.  (§ 372, subd (a)(1) [A "guardian ad litem so appearing for any . . . person who lacks legal capacity to make decisions, . . . shall have power, *with the approval of the court* in which the action or proceeding is pending, *to compromise the same*, to agree to the order or judgment to be entered therein . . . and to satisfy any judgment or order in favor of the ward or conservatee or release or discharge any claim of the ward or conservatee pursuant to that compromise. . . ."  (Italics added.)]; *Scruton v. Korean Air Lines Co.* (1995) 39 Cal.App.4th 1596, 1602-1603 (*Scruton*).)  In approving the settlement, the trial court ensures the interests of the incapacitated party "have been fully and fairly considered." (*County of Shasta v. Caruthers* (1995) 31 Cal.App.4th 1838, 1847.)

Although section 372 does not provide authority for a defendant to bring a motion to enforce a settlement (*Scruton*, *supra*, 39 Cal.App.4th at p. 1607), such is not the case before this court.  Here, the issue of whether the parties had entered into a valid settlement agreement was presented to a jury who, unanimously, found in favor of defendant on her affirmative defense of settlement.  The trial court was then tasked with

21

deciding whether to approve the settlement over the guardian ad litem's refusal to seek such approval. Typically, the refusal to seek approval of a settlement is based on the guardian's decision to repudiate it. When the guardian repudiates a settlement, "'the court has limited power to direct a settlement unilaterally, *but to do so*, *the court must first find that the guardian ad litem has acted arbitrarily and capriciously in the sense that* [*her*] *conduct is inimical to the best interests of the court's ward*.' [Citation.] Consequently, . . . '[a] court . . . may not summarily enforce a tentative settlement agreement when [an incapacitated person] is a party to the litigation. This is because the actual merits of the controversy remain of consequence as the court must base its approval upon the fact that the terms of the settlement are completely fair to the [incapacitated person].'" (*Scruton*, at pp. 1607-1608.) However, according to plaintiff's counsel, this case did not involve repudiation: "[W]e're not repudiating any settlement because—well, there's no settlement from the get-go and no finding by this Court that the guardian that was later appointed, Ms. Fuentes, was acting contrary to the best interests of [plaintiff]."

Given plaintiff's counsel's litigation strategy, the trial court was presented with an impasse. On one hand, plaintiff's counsel would not allow plaintiff's guardian to petition for approval of the settlement. On the other hand, plaintiff's counsel attempted to prevent the trial court from approving the settlement by claiming that no one was repudiating it. Faced with this stalemate, the trial court used its powers under section 128, subdivision (a)(8), and section 187, to approve the settlement after finding it was in the best interests of plaintiff. To see that justice is done, section 187 authorizes a trial court

to exercise its authority to approve a settlement of an incapacitated person's claims. (§ 187 ["When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."]; cf. *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1072-1073 [§ 187 authorizes trial court to amend a judgment to add a judgment debtor under the alter ego doctrine].)

In order for us to accept the trial court's approval of the settlement agreement, we must comply with section 128, subdivision (a)(8), which states in relevant part: "(a) Every court shall have the power to do all of the following:  [¶]  . . .  [¶]  (8) To amend and control its process and orders so as to make them conform to law and justice. An appellate court shall not reverse or vacate a duly entered judgment upon an agreement or stipulation of the parties unless the court finds both of the following:  [¶]  (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal.  [¶]  (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement."  Accordingly, a reversal of the settlement approval requires us to find there is no reasonable possibility that the interests of nonparties or the public will be adversely affected; the reasons for reversing do not outweigh the erosion of public trust resulting

23

from such an action; and the reversal does not reduce the incentive for pretrial settlement. Here, we are unable to make the required findings.

To begin with, we note that the settlement of plaintiff's claims was for defendant's insurance policy limit of $15,000. We recognize that plaintiff's injuries are severe, and that this amount will not cover her costs; however, the full policy limit of $15,000 is the only source of recovery available. Next, as defendant states, a reversal of the settlement approval would erode public trust by sanctioning a personal injury plaintiff attorney's litigation strategy "of making a short-fuse policy-limits demand to set-up an insurance carrier for bad-faith liability in excess of policy limits." And, finally, reversal would significantly reduce the incentive for pretrial settlement of personal injury claims. "When lawyers responsibly settle litigation, public trust in the courts is advanced." (*Union Bank of Cal. v. Braille Inst. of Am.* (2001) 92 Cal.App.4th 1324, 1331.)

In short, the trial court acted well within its discretionary powers in approving the settlement in plaintiff's best interests.

*C. The Settlement Moots Any Punitive Damages Issue.*

Lastly, plaintiff contends the trial court (Judge Vineyard) erred in granting defendant's motion to strike the punitive damages allegations and prayer from the FAC. Because the jury, by special verdict, found that Safeco accepted plaintiff's October 2011 settlement offer by complying with all of its conditions, the resulting "settlement operates as a merger and [bar] as to all preexisting claims and those alleged in the lawsuit that have been resolved." (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1179.) "A prejudgment settlement . . . is decisive of the rights of the parties and

24

bars reopening the issues settled.  Absent a fundamental defect the terms are binding on the parties.  [Citation.]  'It is generally the rule that the merits of the original controversy are no longer in issue where a compromise agreement is made in good faith and without fraud, duress or undue influence.'"  (*A.L.L. Roofing & Bldg. Materials Corp. v. Community Bank* (1986) 182 Cal.App.3d 356, 359 [dismissing appeal as moot where parties settled before entry of judgment].)  Here, by virtue of the settlement agreement, plaintiff no longer retains any claim for punitive damages.  Therefore, no effective relief may be afforded even were we to find her appeal of the court's striking the punitive damages allegations and prayer meritorious.  Consequently, the issue is moot. (*Ebensteiner Co., Inc. v. Chadmar Group*, at p. 1180 [In general, "we cannot grant plaintiff any relief by reversing an order for claims that have been settled and compromised."]; *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 ["""[T]he duty of this court . . . is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."""].)

### III.  DISPOSITION

The judgment is affirmed.  Defendant shall recover her costs on appeal.

CERTIFIED FOR PUBLICATION


                                                    McKINSTER_____
                                                                    Acting P. J.

We concur:



MILLER_____
                    J.



SLOUGH_____
                    J.